919 F.2d 538
 18 Fed.R.Serv.3d 94
 David McCALDEN, Plaintiff-Appellant,
v.
CALIFORNIA LIBRARY ASSOCIATION; City of Los Angeles;
American Jewish Committee; Marvin Hier; Simon Wiesenthal
Center, Inc.; Westin Hotel Company, dba Westin Bonaventure
Hotel, Defendants-Appellees.
 No. 88-5727.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 3, 1989.
Decided Nov. 20, 1990.
 
 Bruce B. McKee, San Francisco, Cal., for plaintiff-appellant.
 John E. Lee, Jones, Day, Reavis & Pogue, Los Angeles, Cal., for defendant-appellee California Library Ass'n.
 Marcia Kamine, Deputy City Atty., Los Angeles, Cal., for defendant-appellee City of Los Angeles.
 Michael F. Sitzer, Loeb & Loeb, Los Angeles, Cal., for defendant-appellee American Jewish Committee.
 Clay Robbins III, Chase, Rotchford, Drukker & Bogust, Los Angeles, Cal., for defendant-appellee Westin Hotel Co.
 Jeffrey Mausner, Laurence M. Berman, Berman, Blanchard, Mausner & Kindem, Los Angeles, Cal., for defendants-appellees Simon Wiesenthal Center and Marvin Hier.
 Appeal from the United States District Court for the Central District of California.
 Before FLETCHER, NELSON and NORRIS, Circuit Judges.
 WILLIAM A. NORRIS, Circuit Judge:
 
 
 1
 Appellant David McCalden filed an eight-claim second amended complaint alleging breach of contract, tortious interference with contract, deprivation of constitutional rights, and violation of California's Unruh Civil Rights Act. The district court dismissed the complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. McCalden appeals.
 
 
 2
 According to the allegations of his complaint, appellant is a member of an organization that engages in research, writing, publication and discussion questioning the historical accuracy of the accepted portrayal of the Holocaust. In July 1984, appellant entered into a contract with appellee California Library Association ("CLA") to rent exhibit space at the association's annual conference scheduled for December 1984 at the Westin Bonaventure Hotel in Los Angeles. Appellant described the exhibit on his application form as one of "Publishers of revisionist, libertarian and atheist research. Specializing in the defense of civil liberties for unpopular causes."
 
 
 3
 In August 1984, appellant entered into an additional written contract with appellee CLA for the presentation of a program entitled "Free Speech and the Holocaust--An overview from several speakers of the severe censorship and intellectual terrorism which inhibits any objective, open discussion of this controversial subject" at the same conference.
 
 
 4
 After appellant entered into the contracts with CLA, appellees allegedly engaged in a series of acts designed to prevent him from presenting his proposed exhibit and program. He alleges that appellee American Jewish Committee ("AJC") contacted representatives of the CLA and informed them that if appellant's contracts were not cancelled, the conference would be disrupted, property would be damaged, and the CLA would be "wiped out." Appellee City of Los Angeles ("City"), acting through its City Council, passed a unanimous resolution to request that the CLA remove appellant from the conference and to sever the City's participation with the conference. This resolution was allegedly based upon representations of Councilman Yaroslavsky at the specific request of one of his constituents, appellee Rabbi Marvin Hier. In addition, the Los Angeles Police Department informed the Director of the CLA that it had received threats against his life if he allowed appellant to participate in the conference. The City also informed the Director that it would be unable to provide adequate police protection or security measures for the conference.
 
 
 5
 Appellee Simon Wiesenthal Center, at the direction of Rabbi Hier and with the approval of the AJC, allegedly rented a conference room from appellee Westin Bonaventure Hotel which was adjacent to the room in which appellant's program was scheduled to take place. Appellant alleges that the principal reason Simon Wiesenthal Center rented the adjacent room was to position itself so as to disrupt his program. He also alleges that Westin Bonaventure Hotel knew the rental of the room to the Simon Wiesenthal Center would constitute a breach of its agreement with appellee CLA to provide adequate security.
 
 
 6
 Appellant alleges that he believes appellees deliberately and in concert caused CLA to cancel its contracts with him, through the application of political pressure and threats.
 
 I. Jurisdiction
 
 7
 Initially, we must determine whether we have jurisdiction to hear this appeal. Appellant must file a notice of appeal within 30 days after entry of judgment. Fed.R.App.P. 4(a)(1). A timely notice of appeal is jurisdictional. Allah v. Superior Court, 871 F.2d 887, 890 n. 1 (9th Cir.1989). Appellees claim that appellant's appeal is untimely.
 
 
 8
 On February 11, 1987, the district court dismissed appellant's first, second, fifth, sixth and seventh claims with prejudice. The court granted leave to amend with respect to the fourth claim, but cautioned that it would "impose sanctions for the filing of a frivolous pleading." Excerpts of Record ("ER") at 15. On March 24, 1987, the district court dismissed the fourth claim with prejudice, because appellant had not amended his complaint within the time allowed. On March 31, 1987, appellant stipulated to dismiss without prejudice his third and eighth claims against the city. With this final stipulation, each of his eight claims had been dismissed. On June 19, 1987, appellant filed a motion requesting the court to enter judgment in his case. On July 30, 1987, the court, in an order, refused to enter judgment on the ground that its former orders constituted entry of judgment. Appellant filed a notice of appeal February 10, 1988.
 
 
 9
 Rule 4(a)(6) provides that the time for appeal does not start running until a judgment is entered in compliance with Rules 58 and 79(a) of the Federal Rules of Civil Procedure, that is, until it is set forth in a separate document and properly entered by the clerk of the court.[1]
 
 
 10
 Appellees argue, and the district court held, that the time for appeal began to run when the court filed the final stipulation on March 31, 1987. The court relied on Anderson v. Allstate Ins. Co., 630 F.2d 677, 680-81 (9th Cir.1980), and Baker v. Limber, 647 F.2d 912, 916 (9th Cir.1981), for authority that a case becomes appealable once all claims against all defendants have been finally dismissed. While it is true that Baker and Anderson are authority for the proposition that appellant's case became appealable on March 31, 1987, and therefore that appellant could have appealed after that date, it does not necessarily follow that the 30-day time period began to run on that date. The time period begins to run only by the entry of a "judgment ... set forth on a separate document."[2] Fed.R.Civ.P. 58. The reason for this rule, so apt in this case, was stated by the Supreme Court in Bankers Trust Co. v. Mallis, 435 U.S. 381, 385, 98 S.Ct. 1117, 1120, 55 L.Ed.2d 357 (1978) (per curiam):
 
 
 11
 The separate-document requirement was ... intended to avoid the inequities that were inherent when a party appealed from a document or docket entry that appeared to be a final judgment of the district court only to have the appellate court announce later that an earlier document or entry had been the judgment and dismiss the appeal as untimely.
 
 
 12
 For purposes of Rule 4(a), in order to make the finality of a case as unequivocal as possible, our circuit has held that the separate-document rule be "mechanically applied," or else a "party will not ordinarily be found to have exceeded any of the time periods [of Rule 4(a) ]." Allah v. Superior Court, 871 F.2d at 890 (quoting Vernon, 811 F.2d at 1276). See also Carter v. Beverly Hills Sav. & Loan Ass'n, 884 F.2d 1186 (9th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 3270, 111 L.Ed.2d 780 (1990) (civil minutes entered in docket book do not constitute final judgment unless separate order filed and all formalities observed).
 
 
 13
 The district court's various orders did not constitute an "entry of judgment" in this case, because no separate document of judgment was entered. Although the district court's July 30 order refusing to enter judgment gave appellant notice that the district court considered his claims to be finally dismissed, the order also suggested, mistakenly, that appellant's time for appeal had already run. Since the very purpose of Rule 4(a) is to avoid confusion, we cannot hold, Magritte-like, that an order stating that "this is not an entry of judgment" is nonetheless an entry of judgment. Our circuit has held fast to a mechanical application of the "separate judgment" rule, requiring all formalities to be observed. See Carter, supra. Therefore, the time for appeal never began to run, and appellant's appeal is timely.
 
 
 14
 We review de novo the dismissal of an action under Rule 12(b)(6) for failure to state a claim. Patee v. Pacific Northwest Bell Tel. Co., 803 F.2d 476, 477 (9th Cir.1986).
 
 II. Breach of Contract Claim
 
 15
 Appellant asserts a state law breach of contract claim against the CLA, claiming that it breached its two contracts with appellant, one for the rental of exhibition space and the second for the rental of a conference room in which appellant planned to present a program expressing his views on the Holocaust. In support of this claim, appellant alleged that the CLA cancelled the contract ostensibly because of threats of disruption to the convention if appellant were allowed to exhibit and speak, but that "the real and only substantial reason for defendant CLA's decision to cancel its contracts with plaintiff was its concern about loss of support ... as a result of action taken by defendant CITY OF LOS ANGELES...." ER at 21. In later claims, however, appellant alleged that the CLA received substantial threats of violence and that the police declined or were unable to provide adequate protection. See, e.g., ER at 23-31.
 
 
 16
 The district court dismissed the breach of contract claim, holding that appellant had pled an impossibility defense to his own claim by his allegations in other sections of the complaint. ER at 4-7. We cannot agree.
 
 
 17
 The issue here is one of alternative pleading. Federal Rule of Civil Procedure 8(e)(2) explicitly provides, in relevant part, that "[a] party may ... state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds." Fed.R.Civ.P. 8(e)(2). Our circuit has held that "[i]n light of the liberal pleading policy embodied in Rule 8(e)(2) ... a pleading should not be construed as an admission against another alternative or inconsistent pleading in the same case." Molsbergen v. United States, 757 F.2d 1016, 1019 (9th Cir.), cert. dismissed, 473 U.S. 934, 106 S.Ct. 30, 87 L.Ed.2d 706 (1985). Following Molsbergen and the clear mandate of Rule 8(e)(2) requires that we reverse the dismissal of appellant's breach of contract claim, because the district court's dismissal was based on an impermissibly strict reading of his complaint.
 
 
 18
 In any event, the allegations in appellant's complaint do not plead a complete impossibility defense to his own claim. For a complaint to be dismissed because the allegations give rise to an affirmative defense "the defense clearly must appear on the face of the pleading." 5A C. Wright & A. Miller, Federal Practice and Procedure, Sec. 1357, at 348-49 (2d ed. 1990). A party invoking the impossibility defense must show that he used reasonable efforts to surmount the obstacles which prevented performance. See Oosten v. Hay Haulers Dairy Employees & Helpers Union, 45 Cal.2d 784, 789, 291 P.2d 17, 21 (1955) (defendant invoking impossibility defense required to show affirmatively that performance was impossible or unreasonably expensive despite exercise of skill, diligence and good faith), cert. denied sub nom Knudsen Creamery Co. of California v. Oosten, 351 U.S. 937, 76 S.Ct. 833, 100 L.Ed. 1464 (1956); see also B. Witkin, Summary of California Law Sec. 786 (1987); Restatement (Second) of Contracts Sec. 261 comment (d) (1981). Here, appellant's complaint does not clearly state that the CLA took reasonable measures to obviate the danger from groups that opposed appellant (e.g., by insisting on police protection, hiring extra security guards or instituting special security procedures.) Hence, when we consider the allegations in all sections of the complaint, appellant does not plead a complete impossibility defense. Accordingly, we vacate the dismissal of the breach of contract claim.
 
 
 19
 III. Interference with Contractual Relationship Claim
 
 
 20
 Appellant's second claim alleges that the City, the AJC, Rabbi Hier, the Wiesenthal Center and Westin tortiously interfered with appellant's contractual relationship with the CLA. The district court dismissed this claim with prejudice, holding that this cause of action required the plaintiff to allege that " 'some identifiable pecuniary or economic benefit' accrue[d] to defendants that formerly accrued to plaintiff." ER at 7 (quoting Garter-Bare Co. v. Munsingwear Inc., 723 F.2d 707, 716 (9th Cir.1984).
 
 
 21
 As we read California law, pecuniary or economic benefit is not an element of the tort of interference with a contractual relationship. A recent California Supreme Court case, which the district court may not have had the benefit of, has not identified this element when listing the essential components of this claim. Pacific Gas & Elec. Co. v. Bear Stearns & Co., 50 Cal.3d 1118, 1126, 270 Cal.Rptr. 1, 791 P.2d 587 (1990) (listing elements which plaintiff must plead to state cause of action for intentional interference with contract, and not including accrual of economic benefit to defendant).[3] Since such benefit is not an essential component of this claim, appellant's failure to plead it does not defeat his claim, which must be reinstated.
 
 IV. Unruh Act Claim
 
 22
 The district court dismissed with prejudice appellant's claim under Sec. 51.7 of the California Civil Code, on the ground that appellant did not fall within a group protected by that statute.
 
 
 23
 Cal.Civ.Code Sec. 51.7(a) as amended in 1984, provides in relevant part, as follows:
 
 
 24
 All persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of their race, color, religion, ancestry, national origin, political affiliation, sex, sexual orientation, age, disability, or position in a labor dispute. The identification in this subdivision of particular bases of discrimination is illustrative rather than restrictive.
 
 
 25
 The district court found that a group of "Holocaust revisionists" was not a political affiliation under the terms of the statute. However, appellant claims on appeal that he is nonetheless a member of a class that is subject to invidious discrimination, whether or not labeled political, and that because the statute's list is meant to be "illustrative rather than restrictive," he should be protected by it.
 
 
 26
 Appellees argue that the "illustrative rather than restrictive" language on which appellant relies was added to the statute after the events in this case, and was an enlargement of the statute's protections. The limited legislative history of the amendment is ambiguous as to whether it was intended to clarify the section or to alter it. In addition, there is only one published California case that does more than mention Sec. 51.7 in passing, and it does not address the issue raised by the district court here. (Coon v. Joseph, 192 Cal.App.3d 1269, 237 Cal.Rptr. 873 (1987)). The California courts, however, have considered Sec. 51.7 to be a "component" of the earlier-enacted Unruh Civil Rights Act, Cal.Civ.Code Sec. 51. See Long v. Valentino, 216 Cal.App.3d 1287, 1293, 265 Cal.Rptr. 96 (1989) (as modified on rehearing).
 
 
 27
 The Unruh Act, Cal.Civ.Code Sec. 51, prohibits discrimination by business establishments on the basis of sex, race, color, religion, ancestry, or national origin. Despite this more restricted list, and the absence of any legislative statement that the list is not exclusive, the California courts have construed Sec. 51's list of classes as "illustrative rather than restrictive." In re Cox, 3 Cal.3d 205, 216, 474 P.2d 992, 999, 90 Cal.Rptr. 24, 31 (1970). Given that the legislative amendment to Sec. 51.7 tracks this language, and the Cox case was cited in the Assembly Bill analysis,[4] it is reasonable to infer that the amendment was a codification of Cox 's pronouncement. At the very least, the California courts' approach to Sec. 51 guides us in the analysis of Sec. 51.7 as an indication of what the California courts might do in this case. See S & R Metals, Inc. v. C. Itoh & Co., 859 F.2d 814, 816 (9th Cir.1988) (in absence of express guidance, federal court must apply state law as it predicts state's highest court would).
 
 
 28
 The California courts have defined the classes of the Unruh Act very broadly to include "individuals who wear long hair or unconventional dress, who are black, who are members of the John Birch Society, or who belong to the American Civil Liberties Union," In re Cox, 3 Cal.3d at 217-18, 474 P.2d 992, 90 Cal.Rptr. 24, students, families with children, welfare recipients, and occupational groups. Marina Point, Ltd. v. Wolfson, 30 Cal.3d 721, 736, 640 P.2d 115, 124, 180 Cal.Rptr. 496, 505, cert. denied 459 U.S. 858, 103 S.Ct. 129, 74 L.Ed.2d 111 (1982).
 
 
 29
 Appellant describes himself as a member of a class of "Holocaust Revisionists," who are subject to invidious discrimination because they spread unpopular views about the history of the Holocaust. ER 35. Appellees claim that appellant's expulsion from the CLA conference was not due to his being a member of an unpopular group, but was because of his "spreading lies." They argue that lying is conduct, not membership in a group, and therefore appellant does not fall within the protection of the Unruh Act. See Frantz v. Blackwell, 189 Cal.App.3d 91, 96, 234 Cal.Rptr. 178, 181 (1987) (discrimination reasonably based on a person's conduct, as opposed to his status, not prohibited by the Unruh Act; Act aims for individualized treatment).
 
 
 30
 On a motion to dismiss, however, the court must deem the complaint's allegations to be true. Williford v. California, 352 F.2d 474, 475-76 (9th Cir.1965). Appellant alleges that he is a member of a group espousing unpopular views. A John Birch Society or ACLU member could fall in the same kind of class, and the Cox decision is explicit that those groups would receive the protection of the Unruh Act.
 
 
 31
 Appellees also argue that the complaint does not sufficiently allege intimidation by threat of violence committed to plaintiff's person or property, as required by Sec. 51.7. Liberally construed, the complaint contains one allegation of a specific threat--the AJC's alleged statement to the CLA, "at the urging and request and with the knowledge, approval and cooperation of Defendants Marvin Hier ... and Simon Wiesenthal Center" that if the contracts with appellant were not canceled, "[d]efendant CLA's 1984 Annual Conference would be disrupted, there would be damage to property and the CLA would be 'wiped out.' " ER at 23. Appellees claim that this language can be construed only as a threat against the CLA, not against the person or property of appellant. They cite Coon v. Joseph, 192 Cal.App.3d 1269, 237 Cal.Rptr. 873 (1987), in which the court held that the plaintiff, a gay man, could not state a Sec. 51.7 claim against a bus driver by alleging that his lover was verbally abused and struck in his presence. The court stated:
 
 
 32
 The complaint establishes that no violence or intimidation was committed or threatened against [plaintiff's] person and thus no cause of action exists in his own right. Following [plaintiff's] argument, any person would have the right to recover damages for himself or herself whenever the rights of any other human being of similar ... sexual orientation were threatened.
 
 
 33
 Id. at 1277-78, 237 Cal.Rptr. 873.
 
 
 34
 On a motion to dismiss, all reasonable inferences are to be drawn in favor of the non-moving party. United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir.1981). Appellant alleges that the appellees intended to disrupt his presentation by creating a demonstration that appellees knew and intended "would create a reasonable probability of property damage and of violence against Plaintiff and members of Defendant CLA." ER 10-11. In view of all the facts pled, it is reasonable to infer that any property damage or injury threatened could be directed against appellant, because the allegations clearly link the alleged threat to an intent to disrupt appellant's exhibit and program. This case must therefore be distinguished from Coon, because it can be reasonably inferred from the complaint that the threatened violence was directed against appellant.
 
 
 35
 Although appellees suggest that the statute must be read as requiring the threat to be conveyed directly to the person threatened,[5] the statute requires only that the plaintiff be intimidated by threat of violence committed against his person or property. In construing a remedial state statute, on a motion to dismiss, in the absence of clear state court direction, this court is reluctant to read any unnecessary restrictions into Sec. 51.7.
 
 
 36
 Finally, some appellees raise a First Amendment defense to this cause of action. However, threats of violence, in some circumstances, are not accorded First Amendment protection. See Brandenburg v. Ohio, 395 U.S. 444, 447, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430 (1969); Wurtz v. Risley, 719 F.2d 1438, 1440 (9th Cir.1983) (threat of rape could be punished under a narrowly drawn statute).[6] Whether appellees would ultimately prevail on such a defense is not a question that can be answered on the current state of the record.
 
 V. Section 1985(3) Claim
 
 37
 Appellant also asserts a claim under 42 U.S.C. Sec. 1985(3),[7] averring that five of the defendants[8] conspired to deprive him of his civil rights "solely because of his membership in a class known as Holocaust revisionists," a "class" the members of which he claims are subject to invidious discrimination because of their views. ER at 35. We must decide whether appellant's self-identified "class" falls within the ambit of classes Sec. 1985(3) has been interpreted to protect.[9]
 
 
 38
 Building upon the Supreme Court's jurisprudence on this issue,[10] our circuit has distilled a rule that to state a claim under Sec. 1985(3) "the plaintiff must be a member of a class that requires special federal assistance in protecting its civil rights." Gerritsen v. de la Madrid Hurtado, 819 F.2d 1511, 1519 (9th Cir.1987); see also Trerice v. Pedersen, 769 F.2d 1398, 1402-03 (9th Cir.1985) (principle underlying Sec. 1985(3) is governmental determination that some groups require and warrant special federal assistance in protecting their civil rights); Schultz v. Sundberg, 759 F.2d 714, 718 (9th Cir.1985) (per curiam) (same); Canlis v. San Joaquin Sheriff's Posse Comitatus, 641 F.2d 711, 720 (9th Cir.) (same), cert. denied, 454 U.S. 967, 102 S.Ct. 510, 70 L.Ed.2d 383 (1981); DeSantis v. Pacific Telephone & Telegraph Co., Inc., 608 F.2d 327, 332-33 (1979) (same). It is against this standard that appellant's claim must be tested.
 
 
 39
 Appellant attempts to fulfill Sec. 1985(3)'s class-based animus requirement by alleging animus against the class of individuals holding particular unpopular historical views. Given our circuit's standard for fulfilling Sec. 1985(3)'s requirement of class-based animus, we cannot accept his argument that the animus against the class of "Holocaust revisionists" satisfies this requirement as our circuit has interpreted it. Appellant makes no argument that Holocaust revisionists have been singled out for special federal protection. We therefore affirm the dismissal of appellant's Sec. 1985(3) claim.
 
 VI. Section 1986 Claim
 
 40
 As appellant himself concedes, "[a] claim can be stated under Sec. 1986 only if the complaint contains a valid claim under Sec. 1985." Appellant's Brief at 60. See, e.g., Karim-Panahi v. Los Angeles Police Dep., 839 F.2d 621, 626 (9th Cir.1988). Thus, our affirmance of the dismissal of appellant's Sec. 1985(3) claim requires us to affirm as well the dismissal of his claim under Sec. 1986.
 
 VII. Section 1983 Claim
 
 41
 In its order of February 11, the district court dismissed appellant's fourth claim without prejudice, on the ground that it failed to state the "Constitutional or statutory basis for the alleged wrong." ER at 10. This claim was dismissed with prejudice on March 24 on the ground that appellant had not attempted to amend his complaint.
 
 
 42
 The district court's February 11 dismissal without prejudice was error. Appellee is not required to state the statutory or constitutional basis for his claim, only the facts underlying it. See Haddock v. Board of Dental Examiners of California, 777 F.2d 462, 464 (9th Cir.1985) (complaint "should not be dismissed if it states a claim under any legal theory, even if the plaintiff erroneously relies on a different legal theory"). Moreover, appellant explicitly mentions 42 U.S.C. Sec. 1983 in the first paragraph of his complaint, which is incorporated by reference in his fourth claim, and his fourth claim tracks the language of Sec. 1983. On remand, the district court should consider whether appellant has stated a claim under Sec. 1983.[11]
 
 
 43
 The City argues that appellant's failure to amend precludes his appeal, because he has, by his silence, acquiesced in the earlier dismissal without prejudice. However, appellant is not required to amend in order to preserve his right to appeal. When one is granted leave to amend a pleading, she may elect to stand on her pleading and appeal, if the other requirements for a final, appealable judgment are satisfied. See 15 C. Wright & A. Miller, Federal Practice and Procedure Sec. 3914 (1976); 3 J. Moore, Federal Practice p 15.11 (2nd Ed.1989).
 
 VIII. Motion for Reassignment
 
 44
 Appellant moves that this case be remanded to a different district judge on the ground that he believes Judge Marshall to be biased against him. As evidence of this alleged bias, appellant complains that the district court 1) mischaracterized his views; 2) intentionally refused to enter judgment in order to delay appellant's appeal; 3) improperly threatened appellant with sanctions in the event that a third amended complaint was frivolous; 4) improperly ordered appellant to show cause why his remaining claims against Los Angeles should not be dismissed, when there was no evidence of lack of prosecution; 5) ignored appellant's application to file documents pending admission of his counsel to practice in the Central District of California; and 6) falsely accused counsel of making an improper communication to the court.
 
 
 45
 Remand by this court to a different district judge, in the absence of proof of personal bias, is granted only in "unusual circumstances." Davis & Cox v. Summa Corp., 751 F.2d 1507, 1523 (9th Cir.1985). In making this determination, we may consider
 
 
 46
 (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.
 
 
 47
 Id. (quoting United States v. Arnett, 628 F.2d 1162, 1165 (9th Cir.1979). Adverse rulings alone are not sufficient to require recusal, even if the number of such rulings is extraordinarily high. Matter of Beverly Hills Bancorp, 752 F.2d 1334, 1341 (9th Cir.1984). The instant case varies markedly from United States v. Jacobs, 855 F.2d 652, 656-57 (9th Cir.1988), cited by appellant. In Jacobs, in addition to making erroneous rulings, the district judge had repeatedly disparaged the movant's case and counsel, and had offered advice to the opponent.
 
 
 48
 The examples of the district court's conduct appellant gives here do not come close to a showing of bias. Appellant's motion for reassignment is denied.IX. Conclusion
 
 
 49
 We affirm the district court's dismissal of appellant's claims under Sec. 1985 and Sec. 1986; we reverse the district court's dismissal of the contract, interference with contract, and Unruh Act claims; we vacate the district court's order dismissing the Sec. 1983 claims, and we remand for further proceedings consistent with this opinion. Finally, we deny appellant's motion that the case be remanded to a different district judge.
 
 FLETCHER, Circuit Judge, dissenting:
 
 50
 I respectfully dissent. We should not reach the merits of this appeal. Fed.R.App.P. 4 requires that an appellant file a notice of appeal within 30 days after a final judgment has been entered in accordance with Fed.R.Civ.P. 58. Absent a timely filed notice of appeal, we have no jurisdiction. Miller v. Sumner, 872 F.2d 287 (9th Cir.1989); Rodgers v. Watt, 722 F.2d 456 (9th Cir.1983) (en banc).
 
 
 51
 The district court dismissed McCalden's last claim on March 31, 1987, almost a full year before McCalden filed his notice of appeal on Feb. 10, 1988. Moreover, the district court, by order on July 30, 1987, more than seven months before McCalden filed his appeal, explicitly informed McCalden that the order entered on March 31, 1987 unquestionably and finally disposed of his case and that the court would issue no further judgment. At the very latest, McCalden was obligated to file his notice of appeal within 30 days of this later order. McCalden's notice of appeal at a minimum was filed almost six months too late.
 
 
 52
 The majority holds that the 30-day period for filing an appeal never began to run because the district court failed to enter a final judgment that met the requirements of Fed.R.Civ.P. 58. Specifically, the majority finds that the district court failed to set forth its judgment on a separate piece of paper as required by that rule. This elevates form over policy and, indeed, over all common sense.
 
 
 53
 The purpose of the separate document rule is to ensure that litigants know precisely when a judgment is final. It therefore removes uncertainty about when litigants must file an appeal. See Fed.R.Civ.P. 58 (Advisory Committee note) (separate document requirement instituted to remove uncertainties as to when a judgment is entered); 11 C. Wright & A. Miller, Sec. 2781, at 6 (1973) (describing purpose of Rule 58). The order issued by the district court on July 30, 1987, denying McCalden's request for entry of judgment, fulfills this purpose.[1] It communicates precisely the information that a final judgment is supposed to communicate. First, it states that the judgment of the district court with respect to all claims is final. Second, it explicitly denies appellant's request for an entry of judgment, and thereby clearly notified McCalden that no further judgment would issue. Once this order was entered, McCalden knew the district court case was over; he had absolutely no reason to delay filing his appeal. His only possible uncertainty was that he might already be too late.
 
 
 54
 Although the July 30 order does not expressly direct entry of judgment on the dismissed claims, it explains that this has already happened. To find this insufficient to meet the requirements of Fed.R.Civ.P. 58, indeed, does inappropriately "elevat[e] ... form over substance." Hamilton v. Nakai, 453 F.2d 152, 155 (9th Cir.1971); see also United States v. Perez, 736 F.2d 236, 238 (5th Cir.1984) (per curiam) ("We are not required to 'mindlessly' apply Rule 58."); Weinberger v. United States, 559 F.2d 401, 402 (5th Cir.1977) (same). In the Supreme Court's words, "[a] pragmatic approach to the question of finality has been considered essential to the achievement of the 'just, speedy, and inexpensive determination of every action ...,' " Brown Shoe Co. v. United States, 370 U.S. 294, 306, 82 S.Ct. 1502, 1513, 8 L.Ed.2d 510 (1962).
 
 
 55
 McCalden knew on July 30, 1987 that his case was over and that the order issued that day was the final piece of paper the district court would enter. He should have filed his notice of appeal not later than August 30, 1987. Yet he waited until February of 1988. We should dismiss the appeal for lack of jurisdiction.
 
 
 
 [1]
 Fed.R.Civ.P. 58 states in relevant part: "Every judgment shall be set forth on a separate document. A judgment is effective only when so set forth and when entered as provided in Rule 79(a)."
 
 
 [2]
 Although a separate judgment is required for the time limit to appeal to begin running, it does not follow that a separate judgment is necessary to create appellate jurisdiction; the parties may waive the requirement, avoiding the " 'pointless exercise of dismissing the appeal and waiting for the district court clerk to enter a separate judgment.' " Allah v. Superior Court, 871 F.2d at 890 n. 1 (quoting Vernon v. Heckler, 811 F.2d 1274, 1276-77 (9th Cir.1987)); Bankers Trust Co. v. Mallis, 435 U.S. at 385, 98 S.Ct. at 1120
 
 
 [3]
 We express no opinion as to the elements of the related tort of interference with prospective economic advantage. See, e.g., Garter-Bare Co. v. Munsingwear Inc., 723 F.2d 707, 716 (9th Cir.1984) (quoting Rickards v. Canine Eye Registration Foundation, Inc., 704 F.2d 1449, 1456 (9th Cir.1983)) (identifying as essential element of tort of interference with prospective economic advantage as "some identifiable pecuniary or economic benefit [that] must accrue to [defendant] that formerly accrued to [plaintiff]"); see also Pacific Gas, 50 Cal.3d at 1126, 270 Cal.Rptr. 1, 791 P.2d 587 (noting differences between these two torts)
 
 
 [4]
 Appellant's Brief, Addendum at 16
 
 
 [5]
 The only mention in the complaint of a threat conveyed to McCalden was the second-hand information that the CLA "had received threats of substantial disruption to the conference and to the property of other exhibitors should [McCalden's] program be allowed to be presented." E.R. 21 (emphasis added)
 
 
 [6]
 Defendants do not challenge the constitutionality of Cal.Civ.Code Sec. 51.7
 
 
 [7]
 The statute reads, in relevant part:
 If two or more persons in any State or Territory conspire to go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.
 
 
 [8]
 Defendant CLA was not named in this part of the complaint
 
 
 [9]
 The requirement that an actionable conspiracy must feature class-based animus was enunciated by the Supreme Court in Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). For the other elements of a Section 1985(3) action, none of which are treated here, see Griffin, 403 U.S. at 102-03, 91 S.Ct. at 1798-99
 
 
 [10]
 See United Bhd. of Carpenters & Joiners, Local 610 v. Scott, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983) (limiting types of class-based animus fulfilling element of Section 1985(3) claims); Griffin, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) (setting forth original requirement of class-based animus)
 
 
 [11]
 Appellees urge that we must reach the merits of whether appellant has stated a Sec. 1983 claim, citing Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 157-58, 82 L.Ed. 224 (1937). While they are correct that an appellate court must affirm a district court's decision if correct, even though the district court's reasoning is flawed, we have already held that the district court's judgment must be reversed in part and the case remanded for further proceedings. Thus, the rationale for the Helvering rule that it "would be wasteful to send a case back to a lower court to reinstate a decision which it had already made," SEC v. Chenery Corp., 318 U.S. 80, 88, 63 S.Ct. 454, 459-60, 87 L.Ed. 626 (1943), is inapplicable. Because the Sec. 1983 claims here may involve constitutional issues that have not been adequately briefed on appeal, we exercise our discretion to allow the district court to consider these claims in the first instance. See I.A. Durbin, Inc., v. Jefferson Nat'l Bank, 793 F.2d 1541, 1552-53 (11th Cir.1986) (having determined that district court's dismissal of some claims was improper, court refused to reach merits of other constitutional claims and merely pointed out district court's improper reasoning, because constitutional issues were inadequately briefed, and because of general principle against unnecessary decision of constitutional questions.)
 
 
 [1]
 The July 30, 1987 Order stated, in relevant part:
 "By this order [the March 24, 1987 order dismissing McCalden's fourth claim], the court dismissed with prejudice all of plaintiff's actions against all of the defendants, except for the City of Los Angeles.
 Although the above orders dismissing the action with prejudice as to certain claims and certain defendants may not be deemed final without certification pursuant to Rule 54(b), an order of dismissal may be treated as final if the remaining claims have been finalized by subsequent developments.... Here, subsequent to the issuance of the orders of February 6 and March 24 dismissing certain claims and certain defendants, plaintiff voluntarily submitted a stipulation entered into with the remaining defendant, the City of Los Angeles to dismiss the action pursuant to F.R.Civ.P. 41(e). This court signed the stipulation on March 26, 1987. The clerk's office filed the order on March 30, 1987 and entered the order on March 31, 1987. Therefore, after the issuance of this order, there were no remaining claims nor defendants to the action.
 Although plaintiff would not have been able to appeal his own voluntary dismissal of the last defendant, plaintiff could and should have filed his notice of appeal with respect to the court's orders of February 6 and March 24th shortly after he filed the stipulation dismissing the remaining claims and defendant in this action."