Argued and submitted May 3, affirmed September 11, petition for review denied November 26, 1996 (324 Or 394)

## John E. GAMBEE, M.D.,
*Petitioner,*

*v.*

## BOARD OF MEDICAL EXAMINERS FOR THE STATE OF OREGON,
*Respondent.*

(CA A86689)

923 P2d 679

David A. Engels argued the cause for petitioner. On the brief was Charles O. Porter.

Richard D. Wasserman argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Erika Hadlock, Assistant Attorney General.

Steve Anderson filed a brief *amicus curiae* for Citizens for Health.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Petitioner seeks review of a final order of the Board of Medical Examiners (Board) revoking his license to practice medicine. Petitioner seeks outright reversal and reinstatement of his license, or, failing that, either a remand to the Board or an order vacating the Board's order in the light of intervening statutory changes. We affirm.

The following material facts are undisputed: Petitioner, a medical doctor, was licensed to practice medicine in Oregon in 1975 and was certified in urology in 1976. Throughout his practice, petitioner generally employed standard and well-accepted medical procedures. However, on occasion, petitioner also employed so-called "alternative" medical procedures. In April 1993, the Board of Medical Examiners filed a complaint, under *former* ORS 677.190(1),[1] alleging that petitioner had engaged in "unprofessional conduct," as defined in ORS 677.188(4). That statute defines "unprofessional or dishonorable conduct" as

"conduct unbecoming a person licensed to practice medicine or podiatry, or detrimental to the best interests of the public, and includes:

"(a) Any conduct or practice contrary to recognized standards of ethics of the medical or podiatric profession or any conduct or practice which does or might constitute a danger to the health or safety of a patient or the public or any conduct, practice or condition which does or might impair a physician's or podiatric physician and surgeon's ability safely and skillfully to practice medicine or podiatry;

"(b) Willful performance of any surgical or medical treatment which is contrary to acceptable medical standards; and

---

[1] *Former* ORS 677.190(1) provided:

"The Board of Medical Examiners for the State of Oregon may refuse to grant, or may suspend or revoke a license to practice issued under this chapter for any of the following reasons:

"(1) Unprofessional or dishonorable conduct."

"(c) Willful and repeated ordering or performance of unnecessary laboratory tests or radiologic studies; administration of unnecessary treatment; employment of outmoded, unproved or unscientific treatments; failure to obtain consultations when failing to do so is not consistent with the standard of care; or otherwise utilizing medical services for diagnosis or treatment which is or may be considered inappropriate or unnecessary."

The Board's complaint alleged four types of violations:

1. Petitioner administered "ozone therapy" to a patient for treatment of myeloma and did so without training and experience in the use of such treatment and without adequate review of the patient's medical records or consultation with the patient's previous physicians.

2. Petitioner diagnosed patients with hypothyroidism and treated them with thyroid hormone without ordering blood testing or obtaining other laboratory evidence to support his diagnosis and treatment.

3. Petitioner tested patients for various symptoms, including allergies, with "EAV" or "Dermatron" devices.

4. Petitioner treated patients with cranial therapy without himself being adequately trained in such therapy and also used an assistant, who was not adequately trained, to do cranial therapy.

In May 1994, a hearings examiner determined that petitioner had engaged in "unprofessional conduct" in violation of *former* ORS 677.190(1) in each of the four particulars alleged in the Board's complaint. The examiner recommended that the Board revoke petitioner's license for 10 years but suspend that revocation if petitioner met certain conditions. In October 1994, the Board adopted the examiner's findings of fact and conclusions of law but rejected his recommendation as to discipline and, instead, revoked petitioner's license outright, effective January 1, 1995. The Board explicitly concluded that *each* of the four violations independently warranted revocation. The Board concluded:

"Dr. Gambee has repeatedly demonstrated a willingness to move into uncharted waters in his practice without regard to the scientific merits of the proposed modality. His

righteous defense of his use of Ozone therapy on a terminal patient because the patient wanted it and Dr. Gambee did not think it would hurt illustrates an attitude which poses a threat to the safety of his patients.

"Alternative methods of treatment are available from alternative providers. When a patient goes to a Medical Doctor or a Doctor of Osteopathy, he or she is entitled to presume that the physician will practice pursuant to scientific, orthodox principles. One of those principles is that unproven or unscientific therapies will not be provided, even for the best of motives, because of the risk of exploitation. Dr. Gambee's use of Ozone with patient D.B., and his rationale for it, is not dissimilar to the use of Laetrile. Patients in these conditions are extremely vulnerable to offers of hope of any kind from anybody for any price. This Board cannot condone these practices for those who do not charge and prohibit them to those that do. The principle is that the modality be scientifically based and justifiable. This Board must protect that principle and the principle will protect the population."

In January 1995, the Board denied petitioner's motion for reconsideration or, in the alternative, for a stay of its revocation order pending appeal.

Petitioner sought review. Thereafter, effective November 3, 1995, the legislature amended ORS 677.190(1), Or Laws 1995, ch 2, § 1 (Spec Sess), adding a new subsection, (1)(b):

"(b) For purposes of this subsection, *the use of an alternative medical treatment shall not by itself constitute unprofessional conduct*. For purposes of this paragraph:

"(A) 'Alternative medical treatment' means:

"(i) A treatment that the treating physician, based on the physician's professional experience, has an objective basis to believe has a reasonable probability for effectiveness in its intended use even if the treatment is outside recognized scientific guidelines, is unproven, is no longer used as a generally recognized or standard treatment or lacks the approval of the United States Food and Drug Administration;

"(ii)   A treatment that is supported for specific usages or outcomes by at least one other physician licensed by the Board of Medical Examiners; and

"(iii)   A treatment that poses no greater risk to a patient than the generally recognized or standard treatment."[2] (Emphasis supplied.)

On review, petitioner advances two arguments. First, he challenges the merits of the Board's revocation order on a host of substantive and procedural grounds. We have reviewed those arguments and reject them without further comment.

Second, petitioner argues that, regardless of the validity of the Board's order at the time it was entered, the intervening changes in the statutory definition of "unprofessional conduct," ORS 677.190(1)(b), during the pendency of his appeal compel us to vacate the Board's order, or, at least, to remand it for reconsideration in the light of those changes. Petitioner asserts that the fact that ORS 677.190(1) *now* prohibits the Board from revoking or suspending a medical license solely on the basis of a practitioner's use of "alternative medical practices," negates the *continuing* validity of his revocation.[3] As amplified below, the ultimate success of plaintiff's argument depends on an assessment of the general purpose of professional discipline and on the Board's reasons for revoking plaintiff's license particularly.

The parties posit ostensibly irreconcilable positions as to the effect of the intervening statutory change on our review of the Board's order. Those positions flow, in turn, from differing—and, in the parties' eyes, mutually exclusive—views of the nature of professional discipline. Petitioner, on the one hand, characterizes the Board's revocation order as prospectively remedial and preventative, and analogizes that order to the imposition of an injunction against

---

[2] The 1995 amendments did not include an express retroactivity clause.

[3] We note that, under ORS 677.220, petitioner cannot apply for reissuance of his license until January 1997:

"Whenever a license issued under this chapter is denied or revoked for any cause, the Board * * * may, after the lapse of two years from the date of such revocation, upon written application by the person formerly licensed, issue or restore the license."

the practice of medicine. Relying on injunction case law, petitioner argues that a material change in the statutory context of an injunction, after the injunction's issuance and before appellate review, must be considered by the appellate court. *See Port of Portland v. Reeder et al*, 203 Or 369, 408, 280 P2d 324 (1955) ("[I]n suits for injunction, when the law is changed by the Legislature between the issuance of the decree in the lower court and the decision of the appeal, the [appellate court] will give effect to the new statute."), *citing Amer. Foundries v. Tri-City Council*, 257 US 184, 201, 213, 66 L Ed 189 (1921) (holding that the validity of an injunction is to be measured against intervening statutory changes and remanding the judgment to the trial court for modification of the injunction).[4]

Extending that reasoning to this case, petitioner argues that: (1) We should apply the new standards in ORS 677.199(1)(b); and (2) on application of those new standards, we should vacate the Board's revocation order. The persuasiveness of petitioner's argument depends ultimately on the aptness of the injunction analogy—*i.e.*, whether, or to what extent, the purpose and effect of the revocation order is prospective and preventative.

Respondent, conversely, contends that the proper analogy is not to injunctions, but to criminal sanctions. That is, revocation is imposed to punish a licensee for past conduct that violated then-extant standards of professional conduct. From that criminal/sanction model, respondent invokes, by analogy, the well-established criminal-law principle that changes to the criminal code after conviction and before appellate review do not abrogate, effect, or modify the underlying conviction or judgment. *See State v. Isom*, 313 Or 391, 395, 837 P2d 491 (1992) (legislature "intend[ed] that Oregon

---

[4] In *American Foundries*, the trial court enjoined members of a labor union from engaging in certain forms of protest and demonstration. 257 US at 193. After the injunction was entered, and during the pendency of the ensuing appeal, Congress passed the Clayton Act of 1914, ch 323, 38 Stat 730 (codified in scattered sections of 15 USC, 18 USC and 28 USC), which, *inter alia*, prohibited federal courts from granting restraining orders or injunctions in cases involving labor disputes, unless necessary to prevent injury to property. *Id.* at 201, *citing* 29 USC § 52. The Supreme Court applied the provisions of the Clayton Act, found that certain aspects of the injunction did not comport with that act, and remanded to the trial court to modify the injunction. *Id.* at 201-13.

courts sentence criminal defendants under the statutory scheme in force when a particular criminal act was committed").

Although the parties purport to present us with an "either/or" choice between two seemingly mutually exclusive models of professional discipline, we need not accept that invitation.[5] Whatever impact the 1995 amendments to ORS 677.190(1) might have on the continuing validity or viability of some of the Board's independent and adequate bases for revoking petitioner's license—e.g., the "ozone therapy" and EAB-related violations—it is apparent that those changes did not affect all of the Board's grounds. We note, particularly, the Board's ultimate finding of fact and conclusion with respect to the "cranial manipulation" violation:

> "Dr. Gambee's use of Mr. Guy Stores, an unlicensed and medically untrained person, to provide cranial therapy to his patients, constitutes a practice contrary to recognized standards of ethics of the medical professional and aiding and abetting the practice of medicine without a license.
>
> "* * * * *

---

[5] Indeed, the parties' contending models may be overly simplistic. The purpose of the Board's disciplinary powers is consumer protection, i.e., promoting the "health, safety, and welfare" of consumers of medical services in Oregon through the regulation of unprofessional conduct. ORS 677.015. Although the statutes and rules that describe the Board's disciplinary powers, see generally ORS chapter 677, OAR chapter 847, do not explicitly identify the factors to be considered in determining the type and degree of professional discipline, suspension or revocation can advance the Board's consumer protective purpose in either or both of two ways.

First, imposition of discipline can have a specific or general deterrent effect akin to that wrought by criminal sanctions. That is, the sanction can serve to deter either the particular practitioner or other members of the profession generally from violating standards of professional conduct. Revocation or suspension "sends a message" that there is a price to be paid for violating existing standards of professional conduct.

Second, by precluding the noncomplying licensee from continuing his or her practice, the Board can protect members of the public prospectively, by ensuring that they will not be subjected to any further unprofessional conduct by the licensee. That rationale corresponds with the injunctive model petitioner invokes.

That assessment of the dynamics of Board discipline finds support, albeit indirectly, in two statutes pertaining to violations of ORS chapter 677 and to violations of revocation or suspension orders. See ORS 677.990(1) (violation of any provision of ORS chapter 677 is a misdemeanor); ORS 676.220 (providing for injunctions against health care professionals who continue to practice following license suspension or revocation).

"Dr. Gambee's use of an inadequately trained layman to provide medical therapy was contrary to the recognized standards of ethics of the medical profession and constitutes unprofessional conduct and aiding and abetting the unlicensed practice of medicine justifying revocation of his license under ORS 677.190(11) and ORS 677.190(1) as defined in ORS 677.188(4)(a)."

The intervening statutory amendment did not implicate those determinations. Thus, at least one of the Board's independently sufficient bases for revocation is unaffected by those statutory changes. Consequently, the Board's revocation order remains valid regardless of the 1995 amendments to ORS 677.190(1).

Affirmed.