Dr. John GAMBEE, Plaintiff,

v.

Dr. J. Bruce WILLIAMS,
et al., Defendants.

No. 96–6255–HO.

United States District Court,
D. Oregon.

June 16, 1997.

William G. Wheatley, Jaqua & Wheatley, P.C., Eugene, OR, for plaintiff.

Gregory A. Chaimov, Asst. Atty. Gen., Dept. of Justice, Salem, OR, for defendants.

Katherine Greene Georges, Dept. of Justice, Salem, OR, for defendant Hugh B. Johnston.

HOGAN, Chief Judge.

This is a civil rights RICO action against members of the Oregon Board of Medical Examiners based on their revocation of plaintiff's medical license, as well as their treatment of plaintiff before and after that revocation. Defendants have filed a Motion to Dismiss, to Strike and for Summary Judgment (# 36) addressing plaintiff's civil rights claims.

## FACTS

Plaintiff possessed a license to practice medicine in Oregon from 1979 to 1994. He practiced primarily traditional medicine but also occasionally practiced alternative medicine. In an affidavit, plaintiff contends the Oregon Board of Medical Examiners (BME) made about 20 requests for his patient records between 1979 and 1993. Gambee Affidavit (# 43) at 2–3. He states that sometimes the BME would not tell him the reason for or nature of their inquiry and that one inquiry involved a patient plaintiff never saw. Id. ·at 3. He states the BME would never disclose who initiated the investigations. Id. In 1995, plaintiff was given the opportunity to review his disciplinary file, and he found no references to patient complaints. Id.

Plaintiff's First Amended Complaint (# 30) alleges defendants conspired to violate his due process and equal protection rights by "repeatedly investigating plaintiff," "leveling false accusations against plaintiff," making "vague requests for descriptions of plaintiff's entire office practice," conducting "frivolous and unjustified investigations of plaintiff and his practice ... based on vaguely worded complaints," "refus[ing] to acknowledge [plaintiff's] letters," and attempting to "settle with plaintiff on outrageous terms." First Amended Complaint (# 30) at 4–5. Plaintiff alleges the license revocation was merely the culmination of 14 years of investigatory harassment. He further alleges the harassment has continued post-revocation in that defendants have misled plaintiff in order to prevent him from reapplying for his license (telling him the applications were being revised, misrepresenting the application period, and commencing a sham investigation to stall plaintiff's reapplication) in order to eliminate plaintiff as a successful market competitor. Id. at 6.

The BME conducted a contested case hearing April 20 and 21, 1994. On October 13, 1994, the BME issued an order revoking plaintiff's license effective January 10, 1995. The BME based the revocation on plaintiff's "unprofessional behavior" and his aiding and abetting the practice of medicine without a license.[1] The revocation was upheld by the Oregon Court of Appeals, see Gambee v. Bd. of Med. Examiners for State of Or., 143 Or.App. 435, 923 P.2d 679 (1996),[2] and the Oregon Supreme Court denied review, 324 Or. 394, 927 P.2d 600 (November 24, 1996).

Plaintiff allegedly understood he would be eligible for relicensing on December 31, 1996, and attempted to obtain an application in April, 1996. Gambee Affidavit (# 43) at 4. BME director Kathleen Haley allegedly told plaintiff that the applications were being revised and would not be available for four months. Id. Plaintiff then enlisted a family member to pose as an applicant. The family member received an application immediately and was encouraged to apply by the May 21, 1996 deadline so that the BME would be able

---

1. The BME's findings and final order indicates plaintiff's license was revoked because of his failure to conduct adequate tests in treating hyperthyroidism, his overzealous use of ozone therapy, his delegation of cranial manipulation treatments to an untrained assistant, and his use of electro-acupuncture. BME's Final Order at 2–5, attached as Ex. 1 to the brief plaintiff submitted to the Oregon Court of Appeals, which is attached to Richard Wasserman's Affidavit, which is attached to defendants' Motion # 36.

2. The Oregon Court of Appeals rejected the procedural and substantive challenges to the BME's decision, and discussed in more detail the propriety of the BME's order in light of a subsequent state law prohibiting license revocation solely on the ground that a doctor practices alternative medicine. The court held that the subsequent statute applied but that the BME's order was adequately based on the finding that plaintiff had aided and abetted the practice of medicine without a license, a charge not implicating plaintiff's alternative medicine practice.

to consider the application at its next quarterly meeting in July, 1996. Plaintiff somehow obtained an application and sent it in by the May 21 deadline, but the application was referred to the Investigations Committee. Plaintiff alleges the Investigations Committee was investigating whether plaintiff had been practicing during the time his license was revoked. That investigation was apparently triggered by a letter plaintiff wrote to the Department of Human Resources in June, 1996 (at which time he was without a license), describing diagnoses he had made prior to his license revocation regarding a certain patient as well as the treatment currently being administered to that patient by other doctors. The BME requested that patient's records dating back to January, 1992. *Id.* at 5. Plaintiff alleges his stand-in doctor is also being investigated and can no longer see plaintiff's patient and that plaintiff has suffered financial hardship as a result of defendants' actions.

On April 7, 1997, the BME issued a Stipulated Final Order of Licensure Pursuant to Request for Voluntary Limitation. Ex. 1 to Affidavit of Thomas W. Cowan (# 62). The Order of Licensure grants plaintiff a license limited by certain stipulated terms, subject to a "Special Purpose Examination." *Id.*

Plaintiff's Amended Complaint (# 30) sets forth three claims: a section 1983 claim, a claim of conspiracy to violate section 1983, and a RICO claim. Defendants' summary judgment motion addresses only the two civil rights claims. The civil rights claims allege that defendants acted under color of their BME offices to deprive plaintiff of his first amendment right to advocate the use of alternative medicine, his fourteenth amendment right to the equal protection of the laws, and his substantive due process right to be free from governmental abuse. Plaintiff prays for monetary damages and an injunction reinstating his license. First Amended Complaint (# 30) at 19.

## DISCUSSION

### 1. Standard of Review

Because the parties have introduced matters outside the pleadings, defendants' Motion to Dismiss will be treated as a motion for summary judgment. A party is entitled to summary judgment under Federal Rule of Civil Procedure 56 where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). A party seeking summary judgment bears the initial responsibility of informing the Court of the basis of its motion, and identifying those portions of the record which it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the moving party meets its initial burden of showing the absence of a material and triable issue of fact, the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense. *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir.1991) (quoting *Richards v. Neilsen Freight Lines*, 810 F.2d 898, 902 (9th Cir.1987)).

### 2. Judicial Immunity

 Agency judges and prosecutors are entitled to absolute, quasi-judicial immunity with regard to acts performed in a court-like setting. *Hirsh v. Justices of the Supreme Court of California*, 67 F.3d 708, 715 (9th Cir.1995) (members of state bar disciplinary board absolutely immune from section 1983 liability). Other circuits have applied the absolute immunity doctrine in the context of a physician's section 1983 challenge to his license revocation. *See Wang v. New Hampshire Bd. of Registration in Medicine*, 55 F.3d 698, 701, 702 (1st Cir.1995) and *Horwitz v. Bd. of Medical Examiners*, 822 F.2d 1508, 1515 (10th Cir.1987), *cert. denied*, 484 U.S. 964, 108 S.Ct. 453, 98 L.Ed.2d 394 (1987). I find that BME members are absolutely immune with regard to acts performed in their statutory capacity as quasi-judicial prosecutors or judges.

### 3. Qualified Immunity

 "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as

their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 813, 102 S.Ct. 2727, 2735–36, 73 L.Ed.2d 396 (1982). This standard is meant to protect "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant,* 502 U.S. 224, 229, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991), quoting *Malley v. Briggs,* 475 U.S. 335, 343, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986). The questions whether the right is clearly established and whether a reasonable official would have known of the clearly established right are questions for the court. *Act Up!/Portland v. Bagley,* 988 F.2d 868 (9th Cir.1993).

In *Armendariz v. Penman,* 75 F.3d 1311 (9th Cir.1996), city officials evicted low-income tenants without notice or a hearing. The tenants filed a section 1983 action, alleging, *inter alia,* deprivation of their substantive due process right to be free from irrational government abuse and their right to equal protection of the laws. With regard to the substantive due process claim, the court held that where conduct is addressed by a specific constitutional provision, e.g. the procedural due process clause, an action challenging such conduct must be brought under that clause rather than under a substantive due process theory. *Id.* at 1319. With regard to the equal protection claim, the court held that plaintiffs' section 1983 claim survived summary judgment on the grounds that a reasonable municipal official would have known that the city's overzealous enforcement of the housing code was not rationally related to the city's interest in health and safety and, therefore, violated plaintiffs' equal protection rights. *Id.* at 1328. In *Armendariz,* there was some evidence that the city intended to chase criminals out of the low-income housing district in order to facilitate the development of a shopping mall.

In *Bello v. Walker,* 840 F.2d 1124 (3d Cir.1988), the court allowed a section 1983 claim to go forward against a city land use department. City officials approved plaintiff's plan to build a four-phase project but then denied his permit application to build phase four immediately after phase one, even though the initial plan said nothing about doing the phases in numerical order. Plaintiff alleged, and the court found, that there was evidence from which a reasonable fact-finder could conclude that the city officials deprived him of his substantive due process rights by improperly interfering with the building permit issuing process for partisan political reasons (one of the officials had lost a political race to plaintiff).

To survive defendants' summary judgment motion, plaintiff must produce evidence from which a fact-finder could reasonably conclude that defendants acted outside their statutory, quasi-judicial roles to violate clearly established constitutional rights of which a reasonable official in their position would have known. As noted, plaintiff claims defendants deprived him of his equal protection, substantive due process, and First Amendment rights.

 With regard to defendants' conduct prior to the decision to initiate disciplinary proceedings, there does not appear to be any violation of plaintiff's clearly established constitutional rights. The statute prohibiting the BME from revoking a license on the sole basis of the practice of alternative medicine was not enacted until after the initiation of disciplinary proceedings. Prior to that statute, the BME had discretion to decide when such practices amounted to "unprofessional behavior." On this basis, the BME's decision to investigate plaintiff because of his alternative medicine practice would satisfy the rational relation test so that a reasonable BME official should not be charged with violating plaintiff's clearly established right to the equal protection of state licensing laws. Moreover, on this record, defendants should not be charged with violating plaintiff's clearly established rights to freely advocate the practice of alternative medicine (defendants revoked plaintiff's right to practice alternative medicine, not to speak about it) or to be free of governmental abuse under a substantive due process theory.

 There also does not appear to be any reckless violation of plaintiff's clearly established constitutional rights during or after the license revocation proceeding. To the extent the failure to answer plaintiff's

letters and submission of an outrageous settlement offer constitute acts outside defendants' realm of absolute, quasi-judicial immunity, those acts are not violative of clearly established constitutional rights. It also appears from the record that plaintiff was able to reapply for his license by the May 21 deadline; any reapplication obstacles did not deprive plaintiff of any constitutional rights.

### 4. Motion for Summary Judgment on Claim/Issue Preclusion Grounds

 As noted above, plaintiff's administrative license revocation was affirmed by the Oregon Court of Appeals, and the/Oregon Supreme Court denied review. Because the administrative decision was judicially reviewed, the full faith and credit clause requires that Oregon preclusion law govern this issue. *See* 28 U.S.C. § 1783. Under Oregon law, relitigation of an issue is precluded where:

1. The issue in the two proceedings is identical;
2. The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.
3. The party sought to be precluded has had a full and fair opportunity to be heard on that issue.
4. The party sought to be precluded was a party or was in privity with a party to the prior proceeding.
5. The prior proceeding was the type of proceeding to which [Oregon courts] will give preclusive effect.

*Nelson v. Emerald People's Utility Dist.*, 318 Or. 99, 862 P.2d 1293 (1993).

With regard to claim preclusion, Oregon law precludes a subsequent claim where:

(1) The claim in the second action is one which is based on the same factual transaction that was at issue in the first, (2) seeks a remedy additional or alternative to the one sought earlier, and (3) is of such a nature as could have been joined in the first action.

*Rennie v. Freeway Trans.*, 294 Or. 319, 323, 656 P.2d 919 (1982).

 Based on Oregon's claim and issue preclusion standards, an Oregon court would bar plaintiff from re-litigating the issue of whether his license was properly revoked. While federal court may be a proper forum to litigate the issue whether defendants violated plaintiff's constitutional rights during the license revocation process, it is not a proper forum to collaterally attack the procedural propriety of the license revocation decision. Moreover, the proper remedy for a section 1983 violation under these circumstances would be monetary damages, not license reinstatement. I find that plaintiff is procedurally barred from seeking an injunction reinstating his medical license.

### 5. Motion to Dismiss Second (Conspiracy) Claim for Failure to State a Claim

 Defendants correctly note that 42 U.S.C. § 1985 requires a class defined by an immutable characteristic rather than economic status. *E.g., Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971) (racial class may be necessary) and *McCalden v. California Library Ass'n*, 919 F.2d 538 (9th Cir.1990) ("Holocaust revisionists" do not constitute a section 1985 class), *cert. denied*, 504 U.S. 957, 112 S.Ct. 2306, 119 L.Ed.2d 227 (1992). Plaintiff counters by stating that he is not alleging a section 1985 claim but is arguing that defendants conspired to violate section 1983. To prove a conspiracy to violate section 1983, however, a plaintiff must establish "an agreement or 'meeting of the minds' to violate constitutional rights." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539 (9th Cir.), *cert. denied*, 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989). As noted, the record contains no evidence that plaintiff's clearly established constitutional rights were knowingly violated, and plaintiff has not introduced any evidence of an agreement to do so.

### CONCLUSION

Defendants are entitled to absolute immunity for acts performed in relation to license revocation proceedings and to qualified immunity for acts outside those proceedings. Because the record evidence establishes that defendants did not act outside the license

revocation proceedings to knowingly deprive plaintiff of his clearly established, federally protected rights, defendants' Motion for Summary Judgment (# 36–3) is granted as to plaintiff's first and second claims for relief. Defendants' Motion to Dismiss (36–1) and Motion to Strike (36–2) are denied as moot.