Edwin Carl GOEHRING, Plaintiff,

v.

Eddy Gene WRIGHT, Rudy Robledo, County of Santa Clara, Scott Jerden, Kim Bishop, Beth Kirschner, Maria C. Lira, Paula Palone, and Manuel Cunha, Defendants.

Civ. No. C 93–20237 EAI.

United States District Court, N.D. California.

July 20, 1994.

James V. Simoni, Johnson & Simoni, Gilroy, CA, for plaintiff.

Brenton Rogozen, Legal Aid Soc. of Santa Clara County, San Jose, CA, for defendants Rudy Robledo and Eddy Gene Wright.

Ann Avenado, Erickson, Beasley, Hewitt & Wilson, Oakland, CA, for defendant County of Santa Clara.

## MEMORANDUM AND ORDER GRANTING SUMMARY JUDGMENT TO DEFENDANT COUNTY OF SANTA CLARA AND PARTIAL SUMMARY JUDGMENT TO DEFENDANTS EDDY GENE WRIGHT AND RUDY ROBLEDO; AND REMANDING ACTION TO STATE COURT

INFANTE, United States Magistrate Judge.

Defendants Eddy Gene Wright, Rudy Robledo and the County of Santa Clara (the "County") have each moved for summary judgment on all claims asserted in plaintiff Edwin Carl Goehring's Third Amended Complaint. Having reviewed the motion papers filed by all parties and considered the oral arguments of counsel, and good cause appearing for the reasons set forth below, the County's motion for summary judgment is granted, the motions of Wright and Robledo for summary judgment are granted in part and denied in part, and the remaining state law claims are remanded to the Santa Clara County Superior Court.

### I. *Procedural Background*

This lawsuit alleging, *inter alia*, federal civil rights law violations arises out of plaintiff's arrest, prosecution, and acquittal in state court for an alleged "hate crime". In June 1991, plaintiff filed this civil lawsuit in Santa Clara County Superior Court, asserting purely state common law tort claims against several individuals, including Wright and Robledo. Plaintiff served a Third Amended Complaint in November 1992, naming the County as an additional defendant and, for the first time, asserting federal civil

rights claims. The Third Amended Complaint asserts seven causes of action against each of the defendants, in order: (1) negligence; (2) false imprisonment; (3) malicious prosecution; (4) defamation; (5) false light; (6) conspiracy; and (7) violation of civil rights. The specific allegations are convoluted and not easily summarized but appear to have all arisen out of the same series of events described below.

In December 1992 the County noticed removal of the action to this Court under 28 U.S.C. § 1441(b),[1] and the parties stipulated to venue in San Jose. In December 1993, pursuant to 28 U.S.C. § 636(c) and F.R.C.P. 73(c), the parties formally consented to the conduct of all proceedings, including dispositive motions and trial, by a magistrate judge.[2] Trial is scheduled to commence on August 23, 1994, and the discovery deadline lapsed on June 1, 1994. Only defendants Wright, Robledo and the County remain in the action,[3] and each has presently moved for summary judgment.

## II. *Factual Background*[4]

In August 1990, a warrant was issued for plaintiff's arrest in connection with a criminal complaint charging plaintiff with, *inter alia,* a misdemeanor violation of California Penal Code section 422.6 (the so-called "hate crimes" statute).[5] The arrest emanated from a telephone complaint to the County Sheriff's Department from one of plaintiff's neighbors in early June 1990.

Deputy sheriff, Michael McDonald, attests that the neighbor (whom he recalls to be former defendant Kirshner) complained to him that plaintiff was "mistreating" her dogs and horses, and had verbally and physically abused Wright and Robledo, a neighboring gay couple.[6] McDonald further attests that, around the same time, Wright and Robledo also called him and complained that plaintiff had "threatened" them.[7] McDonald went to plaintiff's house in Gilroy to investigate, spoke with ten of plaintiff's neighbors, and prepared an "incident report". In keeping with "standard practice", he submitted the report to the Sheriff's Office.[8] McDonald attests that he believed plaintiff's neighbors and that he prepared the incident report on the basis of their statements with the intent "to enforce the law".[9]

According to the incident report, dated June 10, 1990, plaintiff and his wife, Joy Gail Goehring, had during an indeterminate period allegedly victimized each of their neighbors (including two small children), all of whom lived in "close proximity" in a rural mountain pass in Gilroy. Plaintiff and his wife collected rents from four of the neighbors, including Wright and Robledo.[10] All of the victims were reportedly fearful for their

---

**1.** The County invoked this Court's original jurisdiction under 28 U.S.C. § 1331. The Court therefore has supplemental jurisdiction over the related state law claims. *Id.,* § 1367.

**2.** *See* Consent to Trial by Magistrate Judge, filed December 17, 1993.

**3.** Defendant Manuel Cunha was voluntarily dismissed from the action in June 1993, and defendants Scott Jerden, Kim E. Bishop, Maria Lira, Beth J. Kirschner and Paula Palone were all dismissed from the action in April 1994 for plaintiff's failure to timely accomplish service of process (Order, filed April 8, 1994).

**4.** None of the moving defendants has submitted a separate statement of material facts, in violation of Local Rule 220-7. In the absence of separate statements, the factual discussion herein is derived directly from the parties' evidentiary submissions. Unsupported factual assertions made in the parties' briefs, of which there are an astounding number (especially by plaintiff's counsel), are not repeated herein. It is axiomat-

ic that the arguments of counsel are not evidence. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co.,* 690 F.2d 1235, 1238 (9th Cir.1982). Most of counsel's unsupported assertions are immaterial in any event.

**5.** *See* The County's Request for Judicial Notice, ¶ 1 and Exhibit A (copy of arrest warrant).

**6.** McDonald Decl., ¶ 3.

**7.** *Id.,* ¶ 4.

**8.** *Id.,* ¶¶ 5–6 and 10 and Exhibit A (copy of incident report).

**9.** *Id.,* ¶¶ 7 and 8.

**10.** According to the incident report, the rents were collected on behalf of one of Mrs. Goehring's relatives. Plaintiff attests that the rented property was owned by his wife. Goehring Del., ¶ 2 ("Ed Wright and Rudy Robledo were tenants on my wife's property.").

safety and indeed their lives. According to the report:

"Both SUSPECTS [plaintiff and his wife] are heavy abusers of alcohol. They drink from early morning until well into the night. Their intoxication is constant and while intoxicated they become easily angered and violent, arguing with each other and the VICTIMS. While intoxicated, they very often discharge shotguns and rifles into the air across fields and over the roofs of VICTIMS['] homes.

"Both SUSPECTS have threatened to kill, steel-trap, or poison the dogs and horses of those VICTIMS owning such animals if they were not kept quiet and/or chained up.

"While all but the child victims have been verbally threatened with death during arguments, it appears the SUSPECTS have especially picked out VICTIMS # 1 and # 2 [Wright and Robledo] on which to vent their hatred. VICTIM # 1 and # 2 are housemates, and both admittedly homosexual, quite secure in their style of life. Both VICTIMS have been threatened with death by the SUSPECTS, and VICTIM # 1 accosted by SUSPECT # 2 [plaintiff's wife] with a rifle or shotgun when she was so drunk she kept dropping the bullets on the ground.

"VICTIMS # 1 and # 2 have been told by SUSPECT # 1 [plaintiff] that he would kill them because they were homosexuals and bury them at the back of the property in the field.

\*   \*   \*   \*   \*   \*

"... SUSPECT # 1 has constantly harassed [his neighbors], threatening to evict VICTIM # 1 and # 2 due to their sexual preferences, and [two others] because they are friends of VICTIMS # 1 and # 2."

\*   \*   \*   \*   \*   \*

"The SUSPECTS have blatantly committed acts that are injurious, indecent, and offensive to the senses and obstruct the VICTIMS' ability to the free use of the property they rent. This offensive activity interferes with almost the entire little neighborhood's enjoyment of life, keeping them in constant fear, a violation of Section 370/372 P.C.

"They have additionally singled out two homosexual men due to their sexual preferences with threats of death and the loss of their home, a violation of Section 422.-6(a) P.C.

"The SUSPECTS through their constant intoxication and threats, as well as their constant carrying and discharging of firearms to reinforce their threats, have kept their victims in a constant state of fear, bordering on terrorism (422 P.C.).

"This situation has a strong potential for the wounding or death of one or more of the participants. The SUSPECTS' guns were seized a week ago when SUSPECT # 2 was arrested for shooting across ... a heavily traveled state highway, and it is recommended a complaint be filed immediately." (Incident Report by Santa Clara County Deputy Sheriff Michael McDonald, dated June 10, 1990).

Plaintiff denies any animus toward gays, and indeed attests that he has "always been sensitive to the rights of homosexuals".[11] He also declares that he has "conquered" his "drinking problem".[12] Plaintiff says he tried to speak with officials in the District Attorney's office but that they "did not listen" to

---

11. Goehring Decl., ¶ 2. As purported proof, plaintiff attests that his wife's half-brother is gay, and that he and his wife previously rented to a gay couple "and had no problems". Id. As further corroboration, plaintiff supplies the declaration of one of his neighbors, Robert Yurosko, who declares he "never witnessed Mr. Goehring treat Mr. Wright or Mr. Robledo in a different way then [sic] the rest of us because of their homosexual status." Yurosko Decl., ¶ 8.

12. Goehring Supplemental Decl., ¶ 2. Plaintiff has also supplied declarations from his personal physician, Norman Currie, M.D., and his minister, Mike Michaelson, each attesting to his sobriety. See Currie Decl., ¶ 5 ("I have repeatedly examined Mr. Goehring and have never found any evidence of cronic [sic] alcohol abuse."); Michaelson Decl., ¶ 3 ("In approximately 1988 ... [plaintiff] described to me a conversion experience in which he realized the error of drinking to excess.") and ¶ 4 ("During the period of my experience with Mr. Goehring, he attained sobriety. Moreover he was able to maintained [sic] his sobriety.").

his version of events.[13] His troubles with Wright and Robledo, plaintiff contends, derived from his discovery of "a smell like ether" coming from the gay couple's residence: "They might be involved in a drug lab of sorts." [14] Plaintiff says he threatened to give them notice to quit their rental unit, and Wright and Robledo made bias charges in retaliation.[15] Deputy district attorney Anastasia Steinberg prosecuted plaintiff for his alleged hate crimes, *People v. Goehring*, No. F9045790 (Santa Clara Co.).[16] Apparently, plaintiff was acquitted of all charges following trial.[17]

### III. *Discussion*

#### A. *Standard for Evaluating Summary Judgment Motions*

Summary judgment "shall be rendered forthwith" where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "Material" facts are those which "might affect the outcome of the suit under the governing law". *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A properly supported summary judgment motion "cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Nor is the "mere existence of a scintilla of evidence" sufficient to save the day if the non-moving party would bear the burden of proof at trial. *Anderson, supra*, 477 U.S. at 251–253, 106 S.Ct. at 2512. The party opposing the motion "must set forth specific facts showing that there is a *genuine* issue for trial." Fed.R.Civ.P. 56(e) (emphasis added). This means that the non-

moving party "must do more than simply show that there is some metaphysical doubt as to the material facts". *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, "there must be evidence on which the jury could reasonably find for the [non-movant]". *Anderson, supra*, 477 U.S. at 252, 106 S.Ct. at 2512.

#### B. *Ripeness of Summary Judgment Motion*

Plaintiff contends that the motions for summary judgment are "premature" because he has not had an adequate opportunity to conduct discovery.[18] Purportedly, he could not conduct discovery "in earnest" until after receiving certain files from the office of the County's District Attorney this past February, and that other such files were not produced until just prior to the discovery deadline.

"Should it appear *from the affidavits* of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." Fed.R.Civ.P. 56(f) (emphasis added).

Here, plaintiff has not supported his argument for additional discovery with the *requisite* sworn statement from his counsel attesting to the specific discovery still needed and why it could not have been conducted already.

Of course, neither plaintiff's pleadings nor the arguments of his counsel are evidence, and the County has formally denied the allegation. *See* County's Answer to Third Amended Complaint, ¶ 38. However, since the County has supplied no evidence that plaintiff was convicted on any charges, and since plaintiff as the party opposing the motion must receive the benefit of all inferences, for purposes of the motion the Court assumes plaintiff was acquitted of all charges.

13. *Id.*

14. *Id.,* ¶ 3.

15. *Id.*

16. Weger Decl., ¶ 10. According to the County, Ms. Steinberg is not a policy-making employee: only the District Attorney himself, George Kennedy, is authorized to make policy for the office. *Id.,* ¶¶ 2 and 10.

17. Plaintiff alleges that he was acquitted of all charges. *See* Third Amended Complaint, ¶ d–4; *see also* Opposition to County's Motion, at p. 7.

18. The argument is raised at page 4 of each of plaintiff's respective opposition briefs.

"References to memoranda ... do not qualify as motions under Rule 56(f) [which] requires affidavits setting forth the particular facts expected from the movant's discovery. Failure to comply with the requirements of Rule 56(f) is a proper ground for denying discovery and proceeding to summary judgment."

*Brae Transp., Inc. v. Coopers & Lybrand,* 790 F.2d 1439, 1443 (9th Cir.1986). Plaintiff has not even supplied *unsworn* arguments proposing particular avenues of discovery.

■ Moreover, it appears from the record which *is* before the Court that plaintiff has had ample opportunity for discovery and that the motions are *not* premature. As mentioned, the lawsuit was first filed more than three years ago (in June 1991), trial is scheduled to commence next month (in August 1994) and, significantly, the discovery deadline lapsed (on June 1, 1994) *before* any of the motions were even filed. Although the County was named a defendant and the lawsuit was removed to this Court only within the past year (in December 1993), this did not prevent plaintiff from discovering evidence during the more than two years the case was pending in state court.[19] The motions are ripe for determination.

## C. *Civil Rights Cause of Action*

Plaintiff asserts in his seventh cause of action that each of the defendants violated his civil rights under 42 U.S.C. §§ 1983 and 1985.[20]

### 1. *Section 1983*

Section 1983 states:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ..."

42 U.S.C. § 1983. The statute "creates no substantive rights" but instead "merely provides remedies for deprivations of rights established elsewhere." *City of Oklahoma v. Tuttle,* 471 U.S. 808, 816, 105 S.Ct. 2427, 2432, 85 L.Ed.2d 791 (1985).

### a. *The County*

■ Local governments cannot be sued under section 1983 except for injuries resulting from an official policy or custom. *Monell v. Dept. of Social Services of the City of New York,* 436 U.S. 658, 691–696, 98 S.Ct. 2018, 2037–2038, 56 L.Ed.2d 611 (1978).

■ Here, plaintiff has not identified the official policy or custom which he claims infringes his rights. The County specifically inquired regarding this matter in an interrogatory to plaintiff, as follows:

"*INTERROGATORY NO. 18:* Do you contend that your constitutional rights were violated by defendant COUNTY OF SANTA CLARA pursuant to a custom, policy, ordinance or regulation of the COUNTY OF SANTA CLARA? If so, state with specificity the custom, policy, ordinance or regulation pursuant to which your constitutional rights were violated."

Plaintiff's response is unilluminating: "Yes."[21] However, he argues in his opposition papers that the County's prosecution of the hate crimes statute amounts to "undo attention ... given to every new case involving homosexuals", resulting in a form of "reverse discrimination" toward Germans and/or German sur-named persons, whom he contends are imputed in the public consciousness

---

**19.** Third-party discovery was available from the County even before it was added as a party in state court. *See* Cal.Code Civ. §§ 2020 (providing for third-party depositions and document requests). Presumably some such discovery would have been necessary, or at least good practice, in preparing the case against Wright and Robledo for malicious prosecution, regardless whether the County was itself a party to the lawsuit.

**20.** Third Amended Complaint, ¶ VCR–4.

**21.** Avendano Decl., ¶ 2 and Exhibit A (copies of the County's first set of interrogatories to plaintiff and answers thereto). The interrogatory was inartfully drafted in compound form, but plaintiff did not object.

with Nazism.[22]  At the hearing on the motion, his counsel argued further that the plaintiff was also the victim of reverse discrimination toward "non-gays".[23]  Thus, plaintiff apparently contends that the hate crimes statute was selectively enforced against him because of his ethnicity (or perceived ethnicity) and/or his sexual orientation (or perceived sexual orientation) in violation of his right to equal protection.[24]

The County's policy regarding charging hate crimes is contained in an internal memorandum, dated April 3, 1991, from the District Attorney to his "Issuing Team".[25]  The memorandum states in part:

"In response to a growing concern about hate crimes, traditional offenses which appear motivated (in part or in full) by the offender's bias are to be charged additionally as have [sic] crimes ...

"Because of the difficulty of ascertaining the offender's subjective motivation, hate crimes are only to be additionally charged if investigation reveals sufficient objective facts to lead a reasonable person to conclude that the offender's actions were so motivated.  The types of bias are limited to racial, ethnic/national origin, *sexual orientation* and religious bias.

\*    \*    \*    \*    \*    \*

(Emphasis added).  The policy, by its terms, is broadly enforceable against everyone, not merely alleged neo-Nazis or heterosexuals.  Plaintiff has simply supplied no evidence whatsoever that the County has or had a policy, formal or otherwise, of selective enforcement of the hate crimes statute against certain classes of persons.[26]  Accordingly, the County is entitled to judgment as a matter of law on plaintiff's section 1983 claim.

b.  *Wright and Robledo*

■  Generally, private persons cannot be liable under section 1983 unless their actions were "clothed" with governmental authority—i.e., the private persons were "willful participants in joint activity with the state or

**22.**  *See* Opposition Brief to County's Motion, at pp. 7–8, and 16; *see also* Avenado Decl., ¶¶ 2 and 4 and Exhibits A (copy of plaintiff's response to Interrogatory No. 28 ["I was simply being charged because my name was Goehring."]) and C (copy of plaintiff's deposition testimony, at 179:4 ["They tried to paint me as a German Nazi."]).  Plaintiff does not say whether or not he actually has German ancestry or a German sur-name, or whether he is now or ever was affiliated with the Nazis.  He also does not provide evidence that the County assumed, correctly or not, that he is of German derivation and has Nazi sympathies or ties.  The Court assumes for purposes of the motions that plaintiff is of German ancestry.

**23.**  Because this point was not raised in his papers, the only evidence before the Court that plaintiff is heterosexual or was adversely perceived to be so by the defendants is that he was married at the time of the incidents for which he was prosecuted.  *See* McDonald Decl., Exhibit A (copy of incident report re plaintiff and his wife).  For purposes of these motions, the Court assumes plaintiff is heterosexual.

**24.**  Plaintiff also argues that his constitutional rights were infringed by the County's supposed policy of "refusing" to plea bargain.  *See* Opposition to County's Motion, at pp. 10–11.  The argument appears to misconstrue the evidence but, regardless, is utterly flawed.  Plaintiff persists to this day in denying the hate crime charges on which he was prosecuted (and indeed he was apparently acquitted of such charges).  He does not attest that he would have pled guilty had a deal been presented to him.  In short, the County's refusal to plea bargain, if that was in fact its policy, was not injurious to plaintiff.

**25.**  Michaelson Decl., ¶ 7 and Exhibit A (copy of District Attorney's internal memorandum).  The policy is dated *after* plaintiff's prosecution in 1990, but his counsel ominously suggested at the hearing on the motions that the *handwritten* date on the policy memorandum may be unreliable.  More plausibly, but to the same effect, the memorandum is correctly dated yet merely reflects the memorialization of a pre-existing *de facto* policy.  The Court assumes for purposes of the County's motion that the policy reflected by the memorandum was in effect at the time of plaintiff's prosecution.

**26.**  The constitutionality of Penal Code § 422.6 has apparently never been adjudicated (although its companion provision, § 422.7, has been upheld by a California appeals court, *In re Joshua H.*, 13 Cal.App.4th 1734, 17 Cal.Rptr.2d 291 (1993)).  Plaintiff has not argued that § 422.6 is unconstitutional and thus that even *non-discretionary* enforcement would abridge constitutional rights.  Such an argument would be unavailing.  "[C]ounty officials are not liable under § 1983 for performing a ministerial role in enforcing state law."  *Chaloux v. Killeen*, 873 F.2d 1274, 1276 (9th Cir.1989) (holding county sheriff not liable for enforcing allegedly unconstitutional garnishment statute).

its agents". *Sykes v. State of California Dept. of Motor Vehicles*, 497 F.2d 197, 200 n. 2 (9th Cir.1974).

■ Here, the record is devoid of evidence that defendants Wright and Robledo were deputized or otherwise jointly engaged with local authorities in prosecuting plaintiff. Instead, the evidence strongly suggests that these defendants were acting merely as private citizens in complaining to local authorities about plaintiff's alleged activities. Therefore, Wright and Robledo are entitled to judgment as a matter of law pursuant to the state action doctrine on plaintiff's section 1983 claim.

### 2. *Section 1985*

■ Plaintiff also asserts in his seventh cause of action that each of the defendants violated 42 U.S.C. § 1985,[27] which prohibits a conspiracy of multiple persons to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws. 42 U.S.C. § 1985(3). Unlike section 1983, there is no state action doctrine shielding private persons from suit under section 1985(3). Indeed, the Supreme Court has expressly held that section 1985(3) "reaches purely private conspiracies":

> "[I]t would be difficult to conceive of a violation of the statute that did not involve the State in some respect ... there is nothing 'inherent' in the language used in § 1985(3) 'that requires the action working the deprivation to come from the State.' "

*United Brotherhood of Carpenters & Joiners v. Scott*, 463 U.S. 825, 832, 103 S.Ct. 3352, 3358, 77 L.Ed.2d 1049 (1983), quoting *Griffin v. Breckenridge*, 403 U.S. 88, 97, 91 S.Ct. 1790, 1796, 29 L.Ed.2d 338 (1971).

"To bring a cause of action successfully under § 1985(3), a plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir.1992). "Further, the second of these four elements requires that in addition to identifying a legally protected right, a plaintiff must demonstrate a deprivation of that right motivated by 'some otherwise class-based, invidiously discriminatory animus behind the conspirators' action.' " *Id.*, quoting *Griffin, supra*, 403 U.S. at 102, 91 S.Ct. at 1798.

The Ninth Circuit, "[b]uilding upon the Supreme Court's jurisprudence, ... has distilled a rule that to state a claim under § 1985(3) 'the plaintiff must be a member of a class that requires special federal assistance in protecting its civil rights.' " *McCalden v. California Library Ass'n*, 919 F.2d 538, 546 (9th Cir.1990), quoting *Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511, 1519 (9th Cir.1987). In *McCalden*, the Ninth Circuit affirmed the dismissal of a § 1985(3) claim brought by a self-proclaimed member of a class of "Holocaust revisionists", summarily dispensing with the appellant's contention that he was being invidiously persecuted because of his views. The court noted that the appellant made "no argument that Holocaust revisionists have been singled out for special federal protection". 919 F.2d at 546.

■ The County argues that it is "unaware of any authority recognizing German ancestry as a protected class for purposes of section 1985(3)".[28] Plaintiff responds that "Germans" are eligible to invoke the statute.[29]

At least one federal court has actually considered this very issue. In *Weidman v. Thomas*, 794 F.Supp. 1070 (D.Kan.1992), the district court stated:

> "A violation of 42 U.S.C. s 1985(3) is cognizable only for conspiracies motivated by

---

27. Third Amended Complaint, ¶ VCR–4.

28. County's Memorandum, at p. 14.

29. Opposition to County's Motion, at p. 16. Plaintiff is silent in his papers about whether "non-gays" may constitute a protected class under this line of authority, nor did he allude to the issue at oral argument.

some class-based, invidiously discriminatory animus.... Plaintiff, who avers that he is a white male of German origin, alleges no such class-based discrimination, and dismissal of the § 1985(3) claims is therefore required."

794 F.Supp. at 1072 (citations omitted). However, the *Weidman* ruling is unpersuasive. Rather, the line of cases which "recognize[ ] the difficulty, if not the impossibility, of defining the term 'race' as distinguished from 'national origin' ", *Ortiz v. Bank of America*, 547 F.Supp. 550, 564 (E.D.Cal. 1982), seem better reasoned.

In *Ortiz*, Judge Karlton was confronted with the question whether 42 U.S.C. § 1981, another Reconstruction-era civil rights law, was applicable to a plaintiff allegedly discriminated against because of her Puerto Rican descent and accent. Judge Karlton did an exhaustive, scholarly review not only of the case law but of the historical and scientific literature. His review of the cases "reveal[ed] that the law in this area is in a state of profound disarray". 547 F.Supp. at 559. His review of the scientific and social-scientific sources was more helpful:

> "I begin with the fact most widely agreed upon by modern biologists, anthropologists, and other students of human diversity. The notion of race is a taxonomic device and, as with all other such constructs, it exists in the human mind not as a division in the objective universe....
>
> \*　\*　\*　\*　\*　\*
>
> "Without doubt blacks have been the subject of the most persistent racism in this country. Nonetheless, 'racial' justification for discrimination against almost every immigrant (and native) group has plagued this country's intellectual history. Both the *German* and Irish immigrants (whose descendants are now generally viewed as 'native stock') were believed by many to be 'racially' inferior, as were of course the Chinese and Native Americans.... The idea of race as an element of the history of ideas in this country has frequently been no more than a vehicle for racism, i.e., a

presumed inherited defect in those who are not of the racist's kind, however he defines his kind.

> "The lesson of scholarship, then, is that the notion of race is dynamic. Whether one resorts to biology, anthropology or history, the meaning of race turns on why the question is asked and when it is asked. As such, section 1981's scope cannot be restricted to some fixed definition, because by incorporating a racial concept the Supreme Court has incorporated a flexible and changing concept. As with the biologists and anthropologists, the answer to race questions in a legal context can only be supplied in terms of the reason for asking the question."

*Id.,* at 565, 567 (citations omitted; emphasis added).

Judge Karlton's interpretation of section 1981 is equally applicable to section 1985. The Supreme Court's has noted that "it is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause", *Scott, supra,* 463 U.S. at 836, 103 S.Ct. at 3360, but the high court has always eschewed a cramped interpretation of the statute, instead reading it with a higher level of abstraction: " 'there must be some *racial,* or perhaps *otherwise* class-based, *invidiously discriminatory* animus behind the conspirators' action". *Bray v. Alexandria Women's Health Clinic,* —— U.S. ——, ——, ——, 113 S.Ct. 753, 758, 759, 122 L.Ed.2d 34 (1993), twice quoting *Griffin, supra,* 403 U.S. at 103, 91 S.Ct. at 1798 (emphasis added).[30] The Ninth Circuit's "special federal protection" standard derives from this line of cases—see *McCalden, supra,* 919 F.2d at 546 n. 10 (citing *Scott* and *Griffin* )—and, as such, should not be understood to indulge the conspiracy claims of certain racial or ethnic groups, while ignoring those of others.

Whether or not German–Americans are recognized as a racial class for purposes of the statute, there is nonetheless absolutely

---

**30.** In *Bray,* the Supreme Court found it "unnecessary to decide" whether gender-based discrimination violated section 1985(3) because it determined that " 'women seeking abortion' is not a protected class" for purposes of the statute. —— U.S. at ——, 113 S.Ct. at 759.

no evidence before the Court that anti-Teutonic sentiment was even a partially motivating factor in Wright and Robledo's complaints or the County's bringing of hate crimes charges against plaintiff.[31] Plaintiff has simply failed to carry his burden in opposing the motion. Accordingly, each of the defendants is entitled to judgment as a matter of law on plaintiff's § 1985 claim.

### D. *Malicious Prosecution Cause of Action*

Plaintiff's third cause of action is for malicious prosecution.[32] He alleges that "[d]efendants and each of them acted maliciously in instigating the criminal prosecution because they knew the allegations to be false and half-truths".[33]

"Malicious prosecution consists of initiating or procuring the arrest and prosecution of another under lawful process, but from malicious motives and without probable cause." *Cedars–Sinai Medical Center v. Superior Court*, 206 Cal.App.3d 414, 253 Cal.Rptr. 561, 563 (1988).

#### 1. *Wright and Robledo*

■ "Cases dealing with actions for malicious prosecution against private persons require that the defendant has at least *sought out* the police or prosecutorial authorities and falsely reported facts to them indicating that plaintiff has committed a crime." *Sullivan v. County of Los Angeles*, 12 Cal.3d 710, 117 Cal.Rptr. 241, 247, 527 P.2d 865, 871, (1974) (emphasis added).

In *Cedars–Sinai Medical Center, supra,* a state appeals court ruled that a pair of private citizens who had offered testimony against plaintiff at his criminal prosecution could not be liable for malicious prosecution because they had not instigated an investigation or charges but instead had been "approached" by the authorities during the course of an ongoing investigation. 253 Cal. Rptr. at 563. The court expressly distinguished an earlier decision in which "the defendant 'was not merely a witness at the preliminary hearing *but initiated the proceeding* by knowingly making a false report to law enforcement officers, then intentionally and knowingly testified falsely at the preliminary hearing.'" *Id.,* at 563, quoting *Rupp v. Summerfield,* 161 Cal.App.2d 657, 663, 326 P.2d 912 (1958) [emphasis supplied by *Cedars–Sinai Medical Center* court].

Here, the evidence is that either Wright or Robledo "sought out" local authorities to complain about plaintiff's alleged threats toward them.[34] At least one other person contemporaneously and independently complained, as well,[35] so it cannot be said with certainty that Wright or Robledo "initiated" the investigation and eventual prosecution of plaintiff, but neither were they approached "out of the blue" by investigators. Thus, there is sufficient evidence upon which a reasonable trier-of-fact could find the instigation element of plaintiff's claim satisfied against Wright and Robledo.

■ However, to withstand summary judgment on the malicious prosecution claim against these defendants, plaintiff must also introduce evidence establishing a material factual dispute respecting whether Wright and Robledo "knowingly made a false report" to the sheriff's department or "knowingly testified falsely" during plaintiff's criminal proceedings. Curiously, neither Wright nor Robledo has supplied a declaration in sup-

---

31. Indeed, insofar as Wright and Robledo are concerned, plaintiff's own declaration directly contradicts such a notion. Plaintiff attests that he believes Wright and Robledo complained to the authorities about him in retaliation for his threats to evict them, not because he is of German ancestry. *See* Goehring Supplemental Decl., ¶ 3.

32. *See* Third Amended Complaint, ¶¶ MP–1—MP–6.

33. *Id.,* ¶ MP–5.

34. *See* McDonald Decl., ¶ 4 ("[I]n early June of 1990, I received a phone call from either Ed Wright or Rudy Robledo who complained that Mr. Goehring had threatened them.").

35. *Id.,* ¶ 3 ("In early June of 1990, the Sheriff's Department received calls from a neighbor of Edwin Carl Goehring. The neighbor, who I believe was Beth Kirshner, complained that Mr. Goehring was mistreating her dogs and horses. She also told me that Mr. Goehring was verbally and physically abusive to Ed Wright and Rudy Robledo, a gay couple who also rented a house from Mr. Goehring.").

port of their respective motions denying that they deliberately misled the authorities. On the other hand, plaintiff has expressly denied all of the charges under oath, including that he "threatened to do bodily harm to two homosexual renters" (presumably meaning Wright and Robledo).[36] The fact that plaintiff appears to have been acquitted of all charges also lends some corroboration to his denials.[37] Therefore, there are genuine issues of material fact regarding whether Wright and/or Robledo knowingly made false reports to the authorities about plaintiff's actions. Accordingly, Wright's and Robledo's respective summary judgment motions, insofar as they address the malicious prosecution cause of action, are denied.

### 2. The County

▇ "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, *even if he acts maliciously and without probable cause.*" Cal.Govt.Code § 821.6 (emphasis added). "Likewise, if he is immune, so is the entity employing him." *Scannell v. County of Riverside,* 152 Cal.App.3d 596, 199 Cal. Rptr. 644, 648 (1984). Generally, "a public entity is not liable for an injury resulting from the act or omission of an employee of the public entity where the employee is immune from liability". Cal.Govt.Code § 815.-2(b).

In *Scannell,* the court affirmed the trial judge's ruling sustaining the County of Riverside's demurrer to a malicious prosecution claim. 152 Cal.App.3d at 604, 199 Cal.Rptr. 644. The court determined that the investi-

gating detective had been acting within the scope of his employment and therefore both he and his employer, the County of Riverside, enjoyed immunity for his actions "regardless of alleged malice". *Id.*

The instant case is on all fours with *Scannell.* The undisputed evidence is that both the County's investigator (McDonald) and prosecutor (Steinberg) were acting within the scope of their employment in performing their duties. Under § 821.6, it is immaterial whether they were animated by malice toward plaintiff. Accordingly, the County is entitled to judgment as a matter of law on the malicious prosecution cause of action.

### E. Negligence Cause of Action

Plaintiff's first cause of action asserts negligence against each of the defendants.[38] Wright and Robledo purportedly breached their duty of care to plaintiff by misleading and concealing "facts" from investigators: "they failed to explain to third parties that Plaintiff's activity toward them was necessary to enforce the breaches [of their lease] and to protect Plaintiff's property".[39] Further, the gay couple allegedly breached their duty not to disturb plaintiff's quiet enjoyment of his premises and "to abide by all the rules of [their] tenancy".[40]

The County, for its part, was allegedly remiss in prosecuting plaintiff "without investigation and analysis of the facts, while maliciously concealing exculpatory facts".[41]

"Under the laws of California, actionable negligence requires: (a) a legal duty to use care, (b) a breach of such legal duty and (c)

---

**36.** *See* Goehring Decl., ¶ 2 (numerically listing charges: "These statements were false and untrue.").

**37.** The acquittal is, of course, not conclusive because it merely means the charges could not be proven beyond a reasonable doubt either for lack of sufficient evidence that plaintiff did what Wright and Robledo (and others) say he did, or because plaintiff's alleged conduct, despite having been shown beyond doubt, did not rise to the level of a hate crime. Thus, plaintiff's acquittal does not necessarily establish that Wright and Robledo were lying to sheriff's department investigators.

**38.** *See* Third Amended Complaint, ¶¶ GN–1—GN–4.

**39.** *Id.,* ¶ GN–3(1).

**40.** *Id.,* ¶ GN–2. In addition, plaintiff argues in opposition to their respective motion that Wright and Robledo each neglected to use ordinary care "in failing to learn about the surrounding customs and traditions before [choosing] to interpret them according to [their] own peculiar prejudices". Opposition to Robledo's Motion, at p. 7; *see also* Opposition to Wright Motion's, at p. 8 (same).

**41.** *Id.,* ¶ GN–3(6).

such breach as the proximate or legal cause of the resulting injury." *Stuart v. U.S. Government*, 797 F.Supp. 800, 804 (C.D.Cal. 1992).

### 1. *The County*

■ The County is immunized from liability for the alleged negligent criminal investigation of its officials. *Watts v. County of Sacramento*, 136 Cal.App.3d 232, 186 Cal. Rptr. 154 (1982).

■ In *Watts,* plaintiffs Watts and another individual, one Mattos, entered into an agreement permitting the Wattses to grow and harvest crops on the other's land. Mattos then reneged on the agreement and called the Sacramento County sheriff's department to have the Wattses removed from the property. 186 Cal.Rptr. at 154. The Wattses were then instructed by sheriff's officials to leave upon threat of arrest. They did so, and Mattos then "converted" the crops to his own use. *Id.* The Wattses alleged "the officials breached the duty of care owed [them] by failing to investigate whether [they] had any legal right to be on Mattos' property." *Id.,* at 155. The appeals court affirmed the trial judge's dismissal of the Wattses' "negligent investigation" claim, stating that the facts fell "woefully short" of stating a cause of action against the County of Sacramento. *Id.*

The court cited California Government Code § 820.2, whereunder public employees are immune from liability for acts or omissions resulting from the "exercise of discretion ... *whether or not such discretion be abused* " (emphasis added). Further, the court noted that "since the officers are immune from liability for their performance of a discretionary act, defendant County of Sacramento, as the officer's employer, is likewise immune." 186 Cal.Rptr. at 155 (citing Cal. Govt.Code § 815.2(b)).[42]

The *Watts* decision is squarely on point. Accordingly, the County is entitled to judgment as a matter of law on plaintiff's first cause of action for negligence.

### 2. *Wright and Robledo*

■ Plaintiff's negligence cause of action against Wright and Robledo is an ill-conceived "catch-all" claim. Plaintiff has cited no authorities for the proposition that Wright and Robledo owed him a general duty of care to fully and fairly relate his activities in their interviews with the authorities. Moreover, plaintiff's other tort causes—e.g., for malicious prosecution and defamation—adequately capture the alleged wrong. The negligence cause of action, insofar as it relates to Wright's and Robledo's dealings with the authorities, would be at best redundant. Without a showing of duty, however, it is simply frivolous.

■ Plaintiff has also failed to cite any authority establishing a generalized duty on Wright's or Robledo's part to ensure plaintiff's quiet enjoyment of his property or to learn about the customs and traditions of indigenous peoples (e.g., plaintiff and his wife) with ways supposedly different than their own. Plaintiff's theory appears to be that Wright and Robledo were city-slickers from Gilroy,[43] who, had they bothered to learn how things are done in rural, unincorporated southern Santa Clara County, would not have considered plaintiff's activities harassing and would therefore not have felt compelled to complain to the authorities. This novel theory fails for two fundamental reasons: (1) it lacks any legal authority; and (2) there is no anthropological evidence before the Court about the features of this peculiar southern Santa Clara County subculture described in the arguments of plaintiff's counsel.

■ Finally, plaintiff's contractual breach-of-lease claims, clothed within his negligence cause of action, are entirely lacking in evidentiary support. While plaintiff has submitted Wright's and Robledo's lease agreement, he has not attested to any activities on their part which he interprets as violations of the agreement. Thus, even broadly construing the negligence cause of

---

**42.** Section 815.2(b), the "piggy-back" immunity provision, is discussed hereinabove at Part III. C.2 (malicious prosecution cause of action).

**43.** Plaintiff goes to great lengths in his opposition briefs to outline the residential history of the defendants (without citation to the evidence).

action to sound in breach-of-contract, the cause remains utterly unsupported. Accordingly, defendants Wright and Robledo are entitled to judgment as a matter of law on plaintiff's negligence cause of action.

## F. *False Imprisonment Cause of Action*

Plaintiff alleges in his second cause of action that the defendants falsely imprisoned him by obtaining a warrant for his arrest.[44]

### 1. *The County*

■ "[N]o cause of action shall arise against any peace officer, acting within the scope of his authority, for false arrest or *false imprisonment* arising out of such arrest when such arrest was lawful." Cal.Penal Code § 847(a) (emphasis added). Where the official is immune, so is his municipal employer. Cal.Govt.Code § 815.2(b).

■ An arrest is considered "lawful" if it was supported by probable cause at the time it was executed. *Hamilton v. City of San Diego*, 217 Cal.App.3d 838, 266 Cal.Rptr. 215, 218–219 (1990).

" 'Probable cause for an arrest is shown if a [person] of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused. Probable cause may exist even though there may be room for some doubt.... The test in such a case is not whether the evidence upon which the officer made the arrest is sufficient to convict but only whether the prisoner should stand trial.' "

*Id.*, 266 Cal.Rptr. at 219, quoting *People v. Fischer*, 49 Cal.2d 442, 446, 317 P.2d 967 (1957).

Here, the County's sheriff's department had more than ample evidence to satisfy the probable cause standard for plaintiff's arrest. Prior to the arrest, deputy sheriff McDonald had spoken with *ten* of plaintiff's neighbors about his alleged behavior; their consensus was that plaintiff and his wife, "through their constant intoxication and threats, as well as their constant carrying and discharging of firearms to reinforce their threats", were literally terrorizing the neighborhood.[45] Moreover, McDonald expressly determined that these ten witnesses appeared sincere and credible.[46]

Ten credible, independent corroborating witnesses will establish probable cause every time. Accordingly, plaintiff's arrest was valid and the County is immunized from liability therefor. The County is entitled to judgment as a matter of law on plaintiff's second cause of action for false imprisonment.

### 2. *Wright and Robledo*

■ Plaintiff does not specifically allege Wright and Robledo's role in effecting his arrest, but presumably it involved their statements to County authorities. Under California law, public statements made in the course of judicial proceedings are "absolutely privileged". Civ.Code § 47. Further, "reports made by citizens to police regarding potential criminal activity fall within the section 47 absolute privilege." *Hunsucker v. Sunnyvale Hilton Inn*, 23 Cal.App.4th 1498, 28 Cal.Rptr.2d 722, 725 (1994).

In *Hunsucker*, a hotel guest who was briefly arrested in a case of mistaken identity sued the hotel for, *inter alia*, false imprisonment because the hotel manager had reported to the police having seen a man with a gun in the guest's room. The appeals court affirmed dismissal of the claim, expressly holding that section 47 bars false imprisonment claims, and indeed "applies to bar *all* tort actions except for malicious prosecution, that are based upon a communication of the proper type". 28 Cal.Rptr.2d at 724 (citing *Silberg v. Anderson*, 50 Cal.3d 205, 266 Cal. Rptr. 638, 786 P.2d 365 (1990); emphasis in original).

Here, Wright and Robledo did nothing more than the hotel manager in *Hunsucker*: they reported presumptive criminal activity to the authorities. Thus, their conduct was

**44.** *See* Third Amended Complaint, ¶¶ FI–1—FI–FI10.

**45.** *See* McDonald Dec., ¶¶ 5–6 and 10 and Exhibit A (copy of incident report, dated June 10, 1990).

**46.** *Id.*, ¶ 7.

privileged under section 47, and Wright and Robledo are accordingly entitled to judgment as a matter of law on plaintiff's false imprisonment cause of action.

### G. *Defamation and False Light Causes of Action*

Plaintiff alleges in his fourth and fifth causes of action, respectively, that the defendants defamed him and cast him in a false light.[47] Between January 1990 and August 1991, he says, Wright and Robledo "went about the area verbally informing people [that] Plaintiff had been accused of and performed acts constituting a crime."[48] Additionally, the County, through deputy district attorney Steinberg, "caused to be published in the *San Jose Mercury News* a statement that Plaintiff had been convicted on charges other than a hate-crime".[49] The article, entitled "Teen's conviction brings hate-crime law into force" appearing in the August 18, 1991 edition of the newspaper, pertinently reads:

> "Since District Attorney George Kennedy formed Santa Clara County's hate-crimes unit in January, three hate-crime prosecutions have gone to trial, with mixed results. Two resulted in acquittals on the hate crime and convictions on other charges, said Steinberg.
>
> "In the first case, a jury acquitted a landlord of bias against two gay tenants he threatened. They may have been gay, the landlord argued, but the dispute was over routine landlord-tenant issues."[50]

Plaintiff admits that the article did not specifically identify him, but urges that "the description of the actor as a male and as a landlord caused those reading the article to identify it with him".[51]

■ "Defamation is an invasion of the interest in *reputation*." 5 Witkin, *Summary of California Law*, Torts, § 471 (9th ed. 1988), at p. 557 (emphasis in original). It may be either libel or slander. Cal.Civ.Code § 44; see also *id.*, §§ 45 and 46 (defining libel and slander, respectively). A false charge of criminality is defamatory per se, Witkin, *supra*, § 490 at p. 577, and as a consequence no special damage need be proven. Cal.Civ.Code, § 45a.

■ "Truth is a complete defense to civil liability for defamation." *Gill v. Hughes*, 227 Cal.App.3d 1299, 278 Cal.Rptr. 306, 311 (1991). " 'An essential element of defamation is that the publication in question must contain a false statement of *fact*.' " *Id.*, quoting *Carr v. Warden*, 159 Cal.App.3d 1166, 206 Cal.Rptr. 162, 163 (1984) (emphasis in *Carr* decision). The defense is established if the substance of the charge is true, irrespective of slight inaccuracies. " 'If the defendant proves the substance, the gist or the sting of the charge is true, it is sufficient to establish the defense of truth.' " *Gantry Const. Co. v. American Pipe & Const. Co.*, 49 Cal.App.3d 186, 122 Cal.Rptr. 834, 838 (1975) (quoting and approving jury instruction to such effect).

#### 1. *Wright and Robledo*

■ Wright's and Robledo's alleged defamatory statements to the authorities, as discussed above, are privileged. Cal.Civ. Code § 47.[52] Accordingly, they are entitled

---

47. *See* Third Amended Complaint, ¶¶ D–1—D–6 and FL–1—FL–8.

48. *Id.*, ¶ D–3; *see also id.*, ¶ FL–2 (during same period, Wright and Robledo "created publicity by going to members in the community where Plaintiff resides and telling them that Plaintiff had performed acts which constituted a crime").

49. *Id.*, ¶ D–3; see also *id.*, ¶ FL–2 (same).

50. Simoni Decl. in Opposition to Summary Judgment, ¶ 6 and Exhibit D (copy of *San Jose Mercury News* article, dated August 18, 1991, at p. 2B).

51. *Id.*, ¶ D–3.

52. Plaintiff urges, however, that Wright and Robledo also defamed him on three or four occasions in conversations with their neighbors, former defendants Kirschner. *See* Opposition to Robledo's Motion, at p. 19 (citing plaintiff's deposition transcript, Vol. 2, at 13:15–23). Yet although plaintiff observed, he apparently did not overhear, these colloquys, and thus there is simply no evidence before the Court that they involved the making of defamatory statements. Indeed, plaintiff's defamation and false light claims are creatures of unadulterated speculation. Plaintiff virtually admits this, contending it "defies credulity" to claim that the neighbors did not discuss their individual complaints among themselves: "They went into each other's houses, prepared reports that are intertwined and collaborating

to judgment as a matter of law on plaintiff's fourth and fifth causes of action for defamation and false light.

## 2. *The County*

■ The County contends that plaintiff's defamation and false light causes of action are fatally defective under the California Tort Claims Act (Govt.Code §§ 900 et seq.) because they were not timely "presented" to the County prior to filing of the instant action.[53]

■ "It is settled that the filing of a timely claim against the employing public entity is a condition precedent to a tort action against either the public entity or the employee." *Mazzola v. Feinstein,* 154 Cal. App.3d 305, 201 Cal.Rptr. 148, 151 (1984); *see* Cal.Govt.Code § 945.4. "[T]he claim must include a general description of the injuries and the names of the public employees who caused them." *Fall River School District v. Superior Court,* 206 Cal.App.3d 431, 253 Cal.Rptr. 587, 588 (1988). Moreover, each cause of action and set of allegations of the complaint must have been presented in the written claim to the supposedly offending government agency:

> "'If a plaintiff relies on more than one theory of recovery ..., each cause of action must have been reflected in a timely claim [and,] the factual circumstances set forth in the written claim must correspond with the facts alleged in the complaint; even if the claim were timely, the complaint is vulnerable [to dismissal] if it alleges a factual basis for recovery which is not fairly reflected in the written claim.'"

*Id.,* quoting *Nelson v. State of California,* 139 Cal.App.3d 72, 188 Cal.Rptr. 479, 483 (1982).

Here, plaintiff did present a claim to the County in November 1991 (after the instant action was filed but before the County was added as a defendant).[54] The claim, however, is silent regarding the defamation and false light allegations. Thus, plaintiff failed to properly present these causes to the County.

■ Moreover, the offending statement is simply not defamatory. Deputy district attorney Steinberg is paraphrased by the *Mercury News* in an article dealing with the prosecution of hate crimes as having said that a landlord (presumably plaintiff) was acquitted at trial of a hate crime. This is (apparently) true, and would not be injurious to plaintiff even were it false. Although the preceding paragraph of the story attributes Ms. Steinberg as having said those acquitted of hate crimes were convicted on other charges, such statement (if she made it) was merely incidental to the story and as such did not diminish the substantial veracity of the comments attributed to Ms. Steinberg. The essential truth of her attributed statements provides the County with a complete defense. *Gill, supra,* 278 Cal.Rptr. at 311; *Gantry Const. Co., supra,* 122 Cal.Rptr. at 838.[55] Accordingly, the County is entitled to judgment as a matter of law on plaintiff's fourth and fifth causes of action.

## H. *Civil Conspiracy Cause of Action*

Finally, plaintiff alleges in his sixth cause of action that the defendants conspired among themselves "to present false statements and to obtain criminal proceedings against" him.[56]

■ Each of the defendants correctly contends that the conspiracy cause of action

each other on the same computer in the same room, and never spoke to each other[?]" Opposition to Robledo's Motion, at p. 20 (without citing evidence of such gatherings).

53. County's Memorandum, at p. 20.

54. *See* County's Request for Judicial Notice, Exhibit B (copy of claim to County).

55. It is entirely possible that Ms. Steinberg was misunderstood by the reporter for the *Mercury News.* Significantly, Ms. Steinberg is not quoted

in the news story, but merely paraphrased, and there is no evidence before this Court whatsoever regarding her precise statements to the reporter, an element on which plaintiff would bear the burden of proof at trial. See *Anderson, supra,* 477 U.S. at 251–253, 106 S.Ct. at 2512. In any event, the reporter appears to have gotten the story (through Ms. Steinberg) substantially correct.

56. *See* Third Amended Complaint, ¶¶ C–1—C–5.

must be dismissed if all of the others are dismissed: "[I]t is well settled that 'there is *no separate civil action* for conspiracy to commit a recognized tort unless the *wrongful act* itself is committed and damage results therefrom.'" *Kerr v. Rose*, 216 Cal.App.3d 1551, 265 Cal.Rptr. 597, 604 (1990), quoting 5 Witkin, *Summary of California Law*, Torts, § 44, at p. 107 (9th ed. 1988) [emphasis Witkin's].

### 1. *The County*

The conspiracy cause of action against the County cannot survive in the absence of the other tort claims against it.[57] Accordingly, the County is entitled to judgment as a matter of law on plaintiff's sixth cause of action for conspiracy.

### 2. *Wright and Robledo*

■ The conspiracy cause of action may be tried against Wright and Robledo derivatively of the surviving malicious prosecution cause against these defendants. As discussed above, there is sufficient evidence that Wright and/or Robledo deliberately misled the authorities about plaintiff's activities. According plaintiff the benefit of all reasonable inferences from such evidence, a reasonable trier-of-fact could conceivably determine that these two defendants conspired among themselves (and perhaps in conjunction with other neighbors) to fabricate charges against plaintiff. Therefore, plaintiff is entitled to a trial on his conspiracy claim against Wright and Robledo.

### I. *Remand of Remaining State–Law Claims*

■ In view of the foregoing discussion, all that remains to be tried are plaintiff's state-law malicious prosecution and conspiracy causes of action against defendants Wright and Robledo. These claims are before the Court solely on the basis of its statutory supplemental jurisdiction authority.

The Court, in the exercise of its discretion, will therefore remand these causes to the Santa Clara County Superior Court for all further proceedings.

"The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).[58] Supplemental jurisdiction (formerly known as "pendent" jurisdiction) "'is a doctrine of discretion, not of plaintiff's right'". *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.*, 484 U.S. at 350 n. 7, 108 S.Ct. at 619 n. 7.

■ In declining to exercise supplemental jurisdiction, a district court has two options, the traditional one of a dismissal of the remaining supplemental claims without prejudice to their being refiled in state court, or a remand of such claims directly to the state court. See *id.*, at 349–359, 108 S.Ct. at 619–623. "[A] remand generally will be preferable to a dismissal when the statute of limitations on the plaintiff's state-law claims has expired before the federal court has determined that it should relinquish jurisdiction over the case." *Id.*, at 351–352, 108 S.Ct. at 620. Otherwise, a plaintiff might be foreclosed altogether from proceeding with his claims, working an injustice to him and possibly frustrating a State's interests in enforcing its law. *Id.* Moreover, "[e]ven when the applicable statute of limitations has not expired, a remand may best promote the values of economy, convenience, fairness and comity", because it promotes the efficient resolution of controversies by foregoing the costs

---

**57.** Plaintiff admits as much in his opposition to the County's motion, at pp. 20–21: "In truth, the cause of action for conspiracy requires the commission of some other tort." Because, as a matter of law, the County is not liable for any of the other torts alleged against it, it likewise cannot be liable for conspiring to commit any such torts.

**58.** "The new § 1367(c) codifies the discretionary standards for declining to exercise pendent jurisdiction as they have been developed in judicial decisions over the years." 7B Moore's Federal Practice, p. JC–559 (1994) (editor's comment on statute).

to the plaintiff of refiling his suit and to the State in reprocessing it. *Id.*

 Here, remanding the action in lieu of dismissal seems appropriate because of apparent limitations problems. The statute of limitations for a malicious prosecution cause of action is one year. *Feld v. Western Land & Development Co.,* 2 Cal.App.4th 1328, 4 Cal.Rptr.2d 23, 26 (1992). The claim accrues at the time of entry of judgment on the underlying prosecution. *Id.* The derivative conspiracy claim apparently adopts the limitation period of its companion tort and accrues at the time of the latter's commission. *See* 3 Witkin, California Procedure, "Actions", § 402 (1985), at p. 430 (3d. ed. 1985) (accrual at time of last overt act constituting underlying tort); *e.g., Thompson v. California Fair Plan Ass'n,* 221 Cal.App.3d 760, 270 Cal.Rptr. 590, 593 n. 2 (1990) ("assuming" the character of the underlying tort for purposes of ascribing the conspiracy limitation period). It is uncertain when a judgment of acquittal was entered in plaintiff's underlying criminal prosecution (if indeed he was acquitted), but surely it must have occurred several years ago prior to the institution of this lawsuit in 1991. Therefore, a remand is the "preferable" course of action.

## *ORDER*

Accordingly, on the basis of all the foregoing:

IT IS HEREBY ORDERED that the motion for summary judgment brought by the County of Santa Clara is GRANTED in full, and;

IT IS FURTHER ORDERED that the respective motions for summary judgment brought by defendants Eddy Gene Wright and Rudy Robledo are each GRANTED IN PART AND DENIED IN PART, as follows: the respective motions are each GRANTED with respect to the first (negligence), second (false imprisonment), fourth (defamation), fifth (false light) and seventh (federal civil rights violations) causes of action of the Third Amended Complaint, and are each DENIED with respect to the third (malicious prosecution) and sixth (conspiracy) causes of action thereof, and;

IT IS FURTHER ORDERED that this action is remanded to the Santa Clara County Superior Court for determination of plaintiff's remaining state-law causes of action.

SO ORDERED.